**Thomas Michael HOLT, Plaintiff,**

**v.**

**J. E. MOORE, Superintendent, Avery County Unit, Newland, and State of North Carolina, Defendants.**

**No. C–C–72–233.**

United States District Court,
W. D. North Carolina,
Charlotte Division.

March 22, 1973.

As Amended April 6, 1973.

Jacob L. Safron, Asst. Atty. Gen., North Carolina Department of Justice, Raleigh, N. C., for defendants.

ORDER

McMILLAN, District Judge.

In January, 1972, Thomas Michael Holt was in the custody of the Iredell County Jail authorities in Statesville, North Carolina, awaiting trial on a charge of larceny. On January 27, 1972, the United States Marshal for the Western District of North Carolina filed a detainer with Iredell County authorities based on federal charges against Holt of interstate transportation of a stolen motor vehicle and failure to appear under bond for arraignment. On April 7, 1972, Holt was tried in the Iredell County Superior Court and sentenced to two years' imprisonment upon his plea of guilty of the misdemeanor of larceny. Holt was sent to the North Carolina Department of Correction to serve this sentence.

On April 17, 1972, the United States Marshal filed a detainer with the North Carolina Department of Correction, based upon the untried federal charges of interstate car theft and failure to appear for arraignment. This detainer superseded the January 27, 1972 detainer.

Holt was tried in this court upon his federal charges on May 8, 1972, and was

convicted and sentenced to serve a total of four years in prison.

On May 16, 1972, the United States Marshal asked that the detainers dated April 17, 1972, based on the untried charges be withdrawn and on May 16, 1972, the United States Marshal filed a new detainer based upon Holt's federal conviction.

In October, 1972, Holt filed suit in this court challenging the adverse effect the federal detainers were having on his custody situation as a state prisoner.

A hearing was held on February 7, 1973, upon defendants' motion to dismiss the suit and for summary judgment. The hearing was not transcribed as no sworn testimony was taken.

Plaintiff asserted at the February 7th hearing that as a result of the federal detainer against him he was denied the opportunity to work in the prison yard or the kitchen and thereby build up additional gain time, although people with detainers from other states were allowed to do this, and that he was kept in tighter security and allowed fewer privileges and kept at a lower prison grade than persons without such detainers.

It appears of record from the Attorney General's answer and from the affidavit of Martin Peterson that even during the first eight months of a detainer on an untried North Carolina charge, a prisoner cannot attain honor grade, and accordingly is denied reduced custody and cannot participate in work release, study release, home release and other such privileges and benefits available to others.

■ Not every increase in sentence or punishment is a violation of the constitutional ban on double jeopardy. Thus where a convicted prisoner demands a trial de novo (Colten v. Kentucky, 407 U.S. 104, 92 S.Ct. 1953, 32 L. Ed.2d 584 (1972), based on North Carolina v. Pearce, 395 U.S. 711, 89 S.Ct. 2072, 23 L.Ed.2d 656 (1969)), or requests a review of his sentence by a sentence review board (Robinson v. Warden, 455 F.2d 1172 (4 Cir. 1972)), or

successfully appeals and obtains a new trial (North Carolina v. Pearce, supra), it has been held that harsher sentences can be imposed. The rationale of such cases is that the re-trial or reconsideration of the sentence was the prisoner's own idea and was done at his instigation; he has called for and received a new hand and can't complain if in the new deal he drew a busted straight instead of a flush.

On the other hand, where the harsher sentence was not the result of any move or initiative by the prisoner, or the exercise of any option by him, but was, instead, imposed upon him without any choice on his part at any stage of the proceeding, such harsher sentence is unconstitutional, United States v. Benz, 282 U.S. 304, 51 S.Ct. 113, 75 L.Ed. 354 (1931); Ex parte Lange, 85 U.S. 163 (18 Wall.), 21 L.Ed. 872 (1874).

■ Prisoners do not lose all their rights as human beings under the United States Constitution.

" '[I]t is well established that prisoners do not lose all their constitutional rights and that the Due Process and Equal Protection Clause of the Fourteenth Amendment follow them into prison and protect them there from unconstitutional action on the part of prison authorities carried out under the color of state law. [citing cases].' Washington v. Lee, 263 F.Supp. 327, 331 (M.D.Ala.1966), aff'd. per curiam 390 U.S. 333, 88 S.Ct. 994, 19 L.Ed.2d 1212." Jackson v. Godwin, 400 F.2d 529 (5th Cir. 1968).

■ In Holt's case his North Carolina punishment has been increased by action of prison authorities based on something totally beyond Holt's control or request—the filing of the detainer by the United States. He has exercised no options; he has had no hearing; he has had no notice nor opportunity to be heard on the increase in his punishment; his sentence has been increased without due process—that is, unfairly.

■ Many varying factual situations (an untried charge, a misdemeanor, a violent felony conviction) may underlie or

give rise to a detainer. In the absence of some procedurally adequate and fair fact-finding process to discover the basis for a particular detainer and whether it justifies or requires a particular discriminatory treatment *by the state of custody,* it is patently arbitrary to treat Holt or other detainees more severely than persons with no detainers against them. No rational relationship is suggested between the legitimate purposes of the state (punishment, deterrence and rehabilitation) and the unequal treatment promoted by the state's arbitrary policy of assigning the same punishment value to all detainers regardless of the reasons for the detainers' existence.

In fact, it is a sad consequence of present detainer policy that rehabilitation suffers, because essential unfairness diminishes rather than increases respect for organized society; and the manifest unfairness of increasing punishment simply because an unevaluated detainer exists is bound to be a severe impairment to the rehabilitation process.

Nor is the discrimination rendered any less oppressive because it may take the form of the withholding of a "privilege" instead of the denial of a "right." See Morrissey v. Brewer, 408 U.S. 471, 92 S.Ct. 2593, 33 L.Ed.2d 484 (1972).

The Attorney General has notified the court that the Federal Bureau of Prison takes the position, which the North Carolina Department of Correction now adopts, that United States detainers based upon a federal sentence against a state inmate are for notification purposes only and do not limit the state's discretion in any decision affecting the inmate's custodial treatment.

This policy change should alleviate problems for inmates who in the future may have federal detainers filed against them based upon convictions. However, as the letter directing this policy change makes clear, federal detainers based on untried charges can still result in inmates' suffering harsher custodial classifications and unequal treatment.

■ Although Holt was only in the North Carolina Department of Correction for a short period with a federal detainer against him based upon untried charges, the constitutional gravity of the state's detainer policy during this period is inherently suspect because of our law's presumption of innocence until proven guilty. There can not be a fair determination of what effect to give a detainer when there has never been a determination of guilt or innocence on the charge upon which the detainer is based.

The detainer system is somewhat analogous to the operation of a recidivist statute. Recidivist statutes lie at the constitutional boundary of the double jeopardy clause. The argument that recidivist statutes are unconstitutional because they provide additional punishment for crimes where punishment has already been exacted has been rejected on the theory that the sentence given under a recidivist statute is for a specific offense, and the recidivist statute simply allows the sentencing judge in making his determination of sentence for one specific crime to consider other convictions which may show the offender is a "hardcore criminal."

When a court sentences under a recidivist statute, it does so in the context of a trial, the accused has the full panoply of due process safeguards and counsel on each side have the opportunity to explore fully for the court the bases of each conviction which underlies a sentence meted out under a recidivist statute.

To be sentenced under a recidivist statute or to have punishment enhanced under a detainer there must be a basis of prior criminal convictions, not simply untried charges.

■ To enhance punishment under a detainer based upon a conviction there need not be the full-blown trial the recidivist has; however, there must be some procedurally adequate scrutiny to determine if indeed the detainer prisoner should be given harsher treatment.

Holt has now been discharged from his state sentence and is serving his federal sentence. If he prevails in this ac-

tion, injunctive relief may not now be appropriate, but there remains the question of damages.

Defendants' motions for dismissal and summary judgment are denied, and the Clerk is directed to put this case on the jury calendar for trial on the issues of entitlement to damages and the amount of damages.