Gerald D. **NORRIS**, Petitioner,

v.

The **STATE OF GEORGIA** et al., Respondents.

No. C–C–72–266.

United States District Court, W. D. North Carolina, Charlotte Division.

April 6, 1973.

Richard N. League, Asst. Atty. Gen., North Carolina Dept. of Justice, Raleigh, N. C., for respondents.

## ORDER

McMILLAN, District Judge.

On March 31, 1969, Gerald D. Norris, petitioner, was brought to trial in Mecklenburg County, North Carolina, Superior Court. He pleaded guilty of breaking and entering, larceny and assault, and was sentenced to concurrent prison terms of ten and two years.

After Norris began serving these North Carolina sentences, detainers were filed against him by prosecuting authorities in Georgia and Louisiana in connection with untried charges against him in those states. In this suit Norris challenges the validity of those detainers and complains of their adverse effect upon his status and benefits in the North Carolina prison.

## THE GEORGIA DETAINER

By letter dated April 22, 1969, the Sheriff of Fayette County, Georgia, informed the North Carolina Department of Correction that Norris was charged with having committed armed robbery in Fayette County on November 12, 1968. The letter, commonly known as a detainer, requested the North Carolina Department of Correction to inform the

sheriff when Norris could be picked up. Ben Baker, Supervisor of Combined Records for the North Carolina Department of Correction, promptly and correctly notified Norris of the existence of the Georgia detainer.

On November 1, 1971, Norris sent a verified petition to the Solicitor of Fayette County Superior Court styled "Motion For Recall of Detainer And for Dismissal of Outstanding Charges or Indictments OR In the Alternative, for Speedy Trial," in which he asked that the charges against him on which the detainer was based be dismissed or that he be given a speedy trial on these charges as required by the Sixth Amendment. Petitioner alleges no response was made to this petition and that he attempted to spur Georgia into action by sending the presiding judge of the Fayette County Superior Court a petition urging that the charges against him be dismissed or that he be granted a speedy trial. Again, there was no response and petitioner sought help from a higher authority. On August 22, 1972, he filed an application for the issuance of a writ of mandamus in the Georgia Court of Appeals seeking an order directing the Superior Court of Fayette County to act upon his petition. In a letter dated August 23, 1972, the Clerk of the Court of Appeals informed Norris that the Court of Appeals had no jurisdiction to consider his request for a writ of mandamus.

On October 5, 1972, Norris petitioned the Georgia Supreme Court for a writ of mandamus directing the Fayette Superior Court to act upon his petition. The Clerk of the Georgia Supreme Court informed Norris by letter dated October 10, 1972, that the Georgia Supreme Court could only review decisions of a lower court and that his application for a writ of mandamus could not be considered. Subsequently in November, 1972, Norris filed this petition in this court.

## THE LOUISIANA DETAINER

Norris was informed on August 29, 1969, by Ben Baker, Supervisor of Combined Records, of the North Carolina Department of Correction, that the Sheriff of the Parish of Orleans, New Orleans, Louisiana, had placed a detainer with the North Carolina Department of Correction based on alleged violations of Louisiana narcotics and fraud and deceit statutes.

On March 10, 1971, Norris sent a verified petition to the presiding judge of the criminal court of the Parish of Orleans styled "Motion for the Grantment of a Speedy Trial on Pending Charges in this Court." This petition specifically waived extradition to the State of Louisiana for the purpose of trial and demanded that a speedy trial be granted in accordance with the Sixth Amendment. Norris alleges there was no response to this petition and on November 1, 1972, he filed a similar petition with the Parish of Orleans Criminal Court asking for either a dismissal of the charges or a speedy trial. In this petition Norris alleged that witnesses, Louise Heffner, Steve Boyd, and Sandra Carter, claimed to be vital to his defense, were, he feared, no longer available because of the long delay in bringing his case to trial.

In May, 1972, having been unable to elicit a response from the Louisiana authorities, Norris filed a motion in the Orleans Parish Criminal Court to dismiss the charges against him because of denial of his right to speedy trial. Still without response from the Louisiana authorities, on October 5, 1972, petitioner filed an application for a writ of mandamus with the Louisiana Supreme Court, seeking an order directing that he be tried on the Louisiana charges or that they be dismissed, "so that by one means or another, said charges can be disposed of so to permit petitioner to become eligible for rehabilitative privileges within the North Carolina Dept. of Corrections." [Petition Exhibit DD–2]. The Supreme Court of Louisiana denied this application October 19, 1972, noting that "[t]he return of the District Attorney for the Parish of Orleans shows that he will endeaver [sic] to secure the

return of Applicant to Louisiana for trial." [Petition Exhibit EE–1].

Subsequent to the filing of his petition in this court and after the State of North Carolina had been directed to answer, Louisiana authorities on December 20, 1972, issued a writ of habeas corpus ad prosequendum and petitioner's case was calendared for trial on January 17, 1973. Apparently, however, petitioner still has not been taken to Louisiana nor tried on the outstanding Louisiana charges.

In his petition filed in this court Norris attacks both the *effect* of the Georgia and Louisiana detainers on his status as a North Carolina prisoner, and the *validity* of the continued existence of the Georgia and Louisiana charges that underlie the detainers.

Norris contends that the failure of Louisiana and Georgia to try him on charges outstanding since 1969 produces cruel and unusual punishment because while the detainers are pending, North Carolina denies him eligibility for parole, honor-grade custody, and many other institutional privileges for which he would be eligible if he did not have detainers lodged against him. [Petition 2–D]. He further claims that Georgia's and Louisiana's failures to try him have deprived him of his Sixth Amendment right to speedy trial and that this right should be remedied now by barring trial on these charges.

## JURISDICTION OVER THE CAUSE OF ACTION

Jurisdiction is the first question. Norris claims that each state's detainer harms him in two ways: (1) because it has adverse effects upon his North Carolina prisoner situation; and (2) because the detainer is invalid for lack of speedy trial. In other words, both the validity and the adverse effects of the detainers are challenged.

■■ A challenge to the validity of a detainer is a challenge to the legality of the charge or conviction underlying it and a matter traditionally brought in habeas corpus. The Supreme Court assumed in Nelson v. George, 399 U.S. 224, 90 S.Ct. 1963, 26 L.Ed.2d 578 (1970) that a United States District Court in California had jurisdiction, to be exercised once state remedies were exhausted, to consider a habeas corpus suit attacking the adverse *effects* upon a California prisoner's status of a North Carolina detainer based upon a North Carolina conviction. Norris's double-barreled attack on his detainers is an action properly brought in this court in habeas corpus.

■■ In addition, the attack on the adverse effects of a detainer is a matter that may also be considered under 42 U. S.C. § 1983. See Thomas Michael Holt v. Moore and State of North Carolina, W.D.N.C.1973, 357 F.Supp. 1102, and Wickline v. Cox, No. 71–1381, mem. dec. (4th Cir. January 24, 1972). The remedies created by federal habeas corpus and 42 U.S.C. § 1983 were designed to expand the judiciary's protection of liberty and (as suggested by Mr. Justice Brennan in oral argument of Oswald v. Rodriguez, Supreme Court No. 71–1369, 12 CrL 4136) they are not mutually exclusive.

## JURISDICTION OF THIS PARTICULAR COURT

The next question is whether this court (the Western District of North Carolina) is a proper court to hear this case, which is a challenge by a North Carolina state prisoner, originally convicted in a state court of this district, to the validity and adverse effects of detainers (based on untried charges) filed against him by the States of Louisiana and Georgia.

Word v. North Carolina, 406 F.2d 352 (4th Cir. 1969), once appeared to hold that the only proper federal forum to try a habeas corpus attack on an interstate detainer was a United States court in the state which had issued the detainer. Some other courts, e. g. Van Scoten v. Pennsylvania, 404 F.2d 767 (3rd Cir. 1968), had held that the proper United States court was in the state where the

prisoner was being held in custody. This conflict had the makings of a tough dilemma for prisoners caught in the wrong circuit until it was, happily, resolved by Braden v. 30th Judicial Circuit Court of Kentucky, 410 U.S. 484, 93 S. Ct. 1123, 35 L.Ed.2d 443 (1973). In *Braden,* the plaintiff was a prisoner in the Alabama penal system. The State of Kentucky indicted him on a Kentucky state charge and lodged a detainer with Alabama prison officials. Plaintiff filed suit in the United States District Court for the Western District of Kentucky for a writ of habeas corpus to compel Kentucky to grant him a speedy trial on the Kentucky indictment which was the basis for the detainer which Kentucky had lodged with Alabama. The Court of Appeals had held that habeas corpus should be denied because the prisoner was not physically present and therefore was not being unlawfully and physically restrained within the territorial limits of the district court where the writ was sought. The Supreme Court held that because of the Kentucky detainer the prisoner was "in custody" of the Kentucky court even though he was physically in an Alabama prison, and that a habeas corpus petition can be brought in the district where the prisoner is confined and also in the district where the detainer has been issued.

The Court noted the prior conflict among the circuits as to whether the proper forum was the state of confinement or the state demanding the return of the prisoner, and after reviewing the competing considerations held that the action might be brought in either state if appropriate consideration were given to the relative convenience of forums.

■ Where the detainer is based upon a previous conviction, as in Word v. North Carolina, *supra,* the state which filed the detainer can make a stronger showing that it is the more convenient forum and ought to be the forum of choice, because a challenge to a detainer based upon a conviction must necessarily attack the conviction and

bring into question the pre-trial and post-trial proceedings as well as the trial itself. Where, however, as in the case now under consideration, the detainer is based upon an untried charge which may not even have been made the subject of an indictment, the detainer state has usually developed no such equities as would entitle it to require a prisoner in another state to come to the state which lodged the detainer before litigating his right to speedy trial.

■ Moreover, unlike the situation in *Braden, supra,* plaintiff Norris challenges both the validity and the *effects* of his detainers; the dispute as to the effects of the detainers raises factual questions involving North Carolina witnesses and parties; and a court in this state is the most convenient place to try a dispute over whether North Carolina has given illegal effect to its letters from Georgia and Louisiana.

I conclude that this court is the proper forum.

## PLAINTIFF'S STANDING TO RAISE THE SPEEDY TRIAL CONTENTION

■ Kane v. Virginia, 419 F.2d 1369 (4th Cir. 1970) pointed out that habeas corpus is available to challenge denial of the Sixth Amendment right to speedy trial where (1) the prisoner demanded a speedy trial; (2) the state failed to make a diligent effort to try him promptly; and (3) state remedies have been exhausted by seeking dismissal of the charges because of the alleged unconstitutional delay.

Norris' record, summarized briefly above, clearly shows, if true, that Norris has met all three of the *Kane* requirements as against both Georgia and Louisiana.

If Georgia and Louisiana were parties to the Interstate Agreement on Detainers Act, Norris, assuming these facts to be true, would be entitled to the relief he seeks; under that Act the demanding state must try the prisoner within 180

days after demand or face a permanent bar to further prosecution.

North Carolina is a party to that Act, but has apparently not adopted the policy of some states of striking a detainer from the record if the jurisdiction which filed the detainer fails to act within 180 days.

■ Norris, on his allegations, has standing to raise the speedy trial issue via habeas corpus.

## THE MERITS OF THE SPEEDY TRIAL CLAIM

■ Barker v. Wingo, 407 U.S. 514, 92 S.Ct. 2182, 33 L.Ed.2d 101 (1972) contains a recent statement of the principles for evaluating a speedy trial claim. A court must balance four factors: (1) length of delay; (2) reasons, if any, for delay; (3) the defendant's assertion of the right to speedy trial; and (4) the nature and extent of prejudice to the defendant.

■ Assuming Norris' allegations to be true, he has undergone delays of more than three years awaiting trial in both Georgia and Louisiana. The delays, since he demanded trial, have approximated seventeen months in Georgia and twenty-five months in Louisiana. No reasons for the delay are given by either state, and no blame is apparently chargeable to Norris. The detainers have had adverse effects upon his status in prison, upon his rehabilitation, and upon his potential reduction of time in the North Carolina prison system. He has lost opportunity for concurrent service up to now of such sentences as Georgia and Louisiana might have imposed; he asserts that he has lost or will lose witnesses. Trustworthiness of oral testimony diminishes with passage of time, See State v. Starnes, S.D., 200 N.W.2d 244 (1972), in which, although the evidence was unclear whether the delay had actually caused the loss of an alibi witness, an eighteen-month delay was held sufficient to violate the right to speedy trial. See also Leonard v. Vance, 349 F.Supp. 859 (S.D.Tex.1972) in which the Court held that an eighteen-month delay of trial following demand for trial was *per se* prejudicial; that because of the Sixth Amendment nature of the claim, the exhaustion doctrine need not apply; and that the case should be decided on its merits.

## ORDER

It is apparent that the petitioner has alleged a cause of action within the jurisdiction of this court and that if the facts are substantially as alleged, he may well be entitled to orders dismissing the detainers and correcting any adverse effects they may have had upon his status as a North Carolina prisoner.

It is therefore ordered:

1. That the defendants show cause by April 30, 1973, why the Georgia and Louisiana detainers should not be stricken out and why the prosecuting authorities of Georgia and Louisiana should not be permanently restrained from prosecution of the charges underlying the detainers because of illegal delay in bringing those charges to trial.

2. That the North Carolina defendants show cause by April 30, 1973, why they should not be directed to strike the detainers from petitioner's record and to recompute and reassess all of his prison time, status, benefits and other circumstances as though no detainer had ever been lodged against him.

3. That, pending further order of court, the North Carolina defendants not deliver petitioner to any Georgia or Louisiana authorities.

4. That this case be set for hearing on an early non-jury calendar following April 30, 1973.