**Gerald D. NORRIS, Appellee,**

v.

**The STATE OF GEORGIA et al., Appellants.**

**No. 73–2313.**

United States Court of Appeals, Fourth Circuit.

Argued Feb. 5, 1975.

Decided July 24, 1975.

Richard N. League, Asst. Atty. Gen. of North Carolina (Rufus L. Edmisten, Atty. Gen. of North Carolina, on brief), for appellants.

Robert M. Ariail, Columbia, N. C. [Court-appointed], for appellee.

Before WINTER, RUSSELL and FIELD, Circuit Judges.

DONALD RUSSELL, Circuit Judge:

Gerald D. Norris, a North Carolina prisoner, filed a petition for a writ of habeas corpus in the District Court for the Western District of North Carolina seeking dismissal of detainers lodged against him by the States of Georgia and Louisiana. The detainers were based on criminal charges pending in those States against the petitioner. The defendants named in the petition were the Warden of North Carolina prison having custody of the petitioner, the Supervisor of Combined Records for the North Carolina Department of Correction, and the States of North Carolina, Georgia and Louisiana. In his petition,

Norris alleged that the detainers adversely affected his status in the North Carolina prison. He also sought dismissal of (and an injunction against the prosecution of) the underlying criminal charges pending in Georgia and Louisiana because of the claimed failure of those States to afford him a speedy trial as guaranteed under the Sixth Amendment.

With the filing of the petition, the District Court issued an Order directed to the Attorney General of North Carolina requiring him "to answer and show cause why the relief prayed for in the petition ought not to be granted." The Order made no reference to any respondent other than the North Carolina Attorney General. No service—*or even an attempt at service*—of process on the other named respondents in the proceedings was made. All that was done by way of purported service of process was the mailing of the Court's Order and a copy of the petition to the Attorney General of North Carolina.

The Attorney General of North Carolina filed a response as directed by the Court. He admitted that petitioner's status as a prisoner had been adversely affected by the interstate detainers, but asserted that the action, so far as it sought dismissal of the pending charges on speedy trial grounds, should be brought in the federal district courts in Georgia and Louisiana. Despite a reference to "respondents" at the beginning of his response, it is obvious that the Attorney General's return was made only on behalf of himself as the sole person to whom the Court's Order was directed, *for throughout his answer he used only the singular term "respondent."* At no time thereafter did the North Carolina Attorney General purport to represent the States of Georgia and Louisiana.

Subsequent to the North Carolina Attorney General's response the District Court filed an order holding that it had jurisdiction over the cause of action to determine both the *validity* of the criminal charges pending in the foreign juris-

dictions upon which the detainers were based, as well as the *effect* to be given such detainers in connection with petitioner's status as a North Carolina prisoner.[1] It concluded this order with a Rule directed to the respondents, which presumably included the respondent States, to show cause why the unnamed "prosecuting authorities of Georgia and Louisiana" should not be permanently enjoined and barred from prosecuting petitioner on the underlying criminal charges. Copies of the order and petition were mailed to the Attorneys General of Georgia and Louisiana. This mailing represented the only attempt by way of notice or service of process to acquire *in personam* jurisdiction over the States of Georgia and Louisiana.[2]

Louisiana made no response following the mailing of the copy of the Court's order. Georgia did, however, file a limited response denying the jurisdiction of the Court. It asked dismissal of the proceedings for want of proper service,[3] and because of its sovereign immunity to suit.[4] It also pleaded that the State of Georgia was not a proper party to the petition since it did not, itself, file detainers—that function belonging to a particular court of that State.[5] It also asserted that the petitioner had not complied with the procedures of the Interstate Agreement on Detainers Act by failing to direct his request for final disposition of the charges to both the prosecuting official and the appropriate court of the prosecuting officer's jurisdiction.[6]

1. *Norris v. State of Georgia* (D.C.N.C.1973), 357 F.Supp. 1200.

2. The mailing of the petition to the Attorneys General of Georgia and Louisiana could not constitute an effective, extraterritorial service of process as described in Rule 4(e), F.R.Civ.P. Rule 4(e) authorizes a federal district court to effect a court ordered method of service on parties found outside the state only when there is direct statutory authority for doing so. Absent such authorization by a specific federal statute, the court has no "blanket authority to enter an order for substituted or personal service outside of the state in which it is sitting." 4 Wright & Miller, Federal Practice and Procedure § 1117, p. 482 (1969). *See, also, Central Operating Co. v. Utility Workers of America* (4th Cir. 1974), 491 F.2d 245, 249.

3. The response cited Ga.Code § 40–209, prescribing that process in any proceeding against the State must be served upon the Governor. This is also the requirement of Rule 4(d)(6), F.R.Civ.P.

4. It might be well to add that the District Court treated the issue of jurisdiction entirely in terms of subject matter. At no time did it address the question of jurisdiction *in personam* over the defendants Georgia and Louisiana. Had it done so, it should have· become obvious that the suit against those two States in the federal court of North Carolina was so "palpably in violation of * * * [the Eleventh] Amendment * * *" (*Scully v. Bird* (1908), 209 U.S. 481, 486, 28 S.Ct. 597, 598, 52 L.Ed. 899) that the District Court should have dismissed out of hand the proceedings as against those States. Nor could the Attorney General of North Carolina have had authority to waive the constitutional immunity from suit of those States by any action on his part. *See*

*Ford Co. v. Dept. of Treasury* (1945), 323 U.S. 459, 468, 65 S.Ct. 347, 89 L.Ed. 389; *Hagood v. Southern* (1886), 117 U.S. 52, 71, 6 S.Ct. 608, 29 L.Ed. 805; *Board of Regents of University of Nebraska v. Dawes* (D.C.Neb.1974), 370 F.Supp. 1190, 1193.

It may be suggested that the action could be treated as one against the prosecuting officers in the States of Georgia and Louisiana and thereby avoid the bar of the Eleventh Amendment. But, unfortunately for this argument, those officers are not named parties and there has never been any service upon them. It is true that notice was mailed to the Attorneys General of Louisiana and Georgia (after the Court had resolved the issue of jurisdiction over the subject matter of the suit), but this would not give the Court personal jurisdiction of those officials, since there was no authority for such service of process outside the jurisdiction of the State of North Carolina. *See* note 2, *supra*. Moreover, the argument would presuppose that the State Attorney General controls prosecutions in the State, a presumption that is not in accord with the rule in many states where the control of prosecutions is vested in the local District Attorney or Solicitor. Manifestly, it cannot be argued that personal jurisdiction over these local prosecutors was ever had. They were neither named as parties nor was any form of notice given them. This would be an additional ground for invalidating so much of the order of the District Court as would enjoin the States of Georgia and Louisiana from further prosecution of the petitioner.

5. *See* Ga.Code § 2–4602, Art. VI, § XI, par. 2 and § 24–2901 et seq.

6. *See* Ga.Code § 77–504b.

It concluded its response with a request in the alternative, assuming its plea to the jurisdiction of the Court was denied, for a change of venue to the Northern District of Georgia. This motion was submitted by the Attorney General of Georgia for disposition without oral argument.

In its final order, the District Court summarily dismissed the State of Georgia's motions, directed the North Carolina respondents to redetermine petitioner's institutional status without reference to any detainer and permanently restrained the Georgia and Louisiana authorities from prosecuting petitioner on the charges underlying the detainers. For the reasons set out below, we affirm as much of that order as eliminates the adverse impact of the detainers on petitioner's institutional status, but reverse that portion of the order barring Georgia and Louisiana from prosecuting petitioner on the untried charges upon which the detainers were based.

██ ██ The law is too well settled to permit dispute over the proposition that a federal district court in the state or district of confinement may entertain by habeas corpus a prisoner's challenge to the adverse effects on the conditions of his confinement resulting from the filing of a foreign detainer. *Nelson v. George* (1970), 399 U.S. 224, 90 S.Ct. 1963, 26 L.Ed.2d 578. Thus, in the instant appeal, the District Court had both subject matter jurisdiction *and* the authority by reason of *in personam* jurisdiction to direct the North Carolina officials by way of affirmative injunctive relief to give no effect to the Georgia and Louisiana detainers so far as petitioner's status as a North Carolina prisoner was concerned.[7]

We think, however, that the challenge to the validity of the underlying charges stands on a different footing for under the facts of this case, the District Court had no capacity, within its geographic boundaries, to enforce its order—a power dependent upon the valid exercise of *in personam* jurisdiction. At no point in its orders did the District Court indicate the circumstances under which it presumed to have acquired *in personam* jurisdiction of the States of Georgia and Louisiana and their prosecuting officials. In asserting "jurisdiction" over petitioner's attack on the validity of the pending criminal charges, the District Court instead relied on *Braden v. 30th Judicial Circuit Court of Ky.* (1973), 410 U.S. 484, 93 S.Ct. 1123, 35 L.Ed.2d 443. *Braden,* in stark contrast to the facts of this appeal, involved an Alabama prisoner who attacked the validity of a Kentucky detainer based on pending criminal charges *by petitioning for a writ of habeas corpus in the federal district court of Kentucky, the demanding state.* But the Kentucky District Court's capacity to enforce its order was not questioned for, as the Court expressly noted, the *"respondent was properly served" within the Western District of Kentucky,* which was his domicile for personal jurisdiction purposes.[8] Thus *Braden* dealt only with the question of the District Court's exercise of subject matter jurisdiction as imposed by the language of the federal habeas corpus statute, 28 U.S.C. § 2241(a), requiring the petitioner to be "in custody" within the jurisdiction of the issuing court. By holding that the state detaining the petitioner in immediate confinement acted as an agent for the demanding state that filed the detainer, the *Braden* Court avoided the "slavish application" of the rule of *Ahrens v. Clark* (1948), 335 U.S. 188, 68 S.Ct. 1443, 92 L.Ed. 1898, which would have required the petitioner to file in the state of his confinement to satisfy the habeas corpus statutory requirements *relating to subject matter jurisdiction* —i. e., the requirement that the prisoner be in custo-

---

7. The District Court properly found, as the North Carolina Attorney General conceded, that the North Carolina authorities had given express consideration to the Georgia and Louisiana detainers in determining petitioner's eligibility for parole, honor-grade custody and other institutional privileges for which he would have been eligible had not the detainers been lodged against him.

8. 410 U.S. at 500, 93 S.Ct. 1123.

dy within the court's jurisdiction. By employing this agency fiction, the District Courts in the demanding as well as the confining state were free to exercise concurrent "habeas corpus" or subject matter jurisdiction. But the Court did not deal with *in personam* jurisdiction, since that was not in issue.

While *Braden* thus employed the agency fiction for purposes of fulfilling the "in custody" requirement of the habeas statute, so as to support subject matter jurisdiction, that decision did not hold that the immediate custodian becomes "an agent *for purposes of service* simply by recognizing the existence of * * * [another] state's intent to secure custody of a prisoner now in another jurisdiction," so as to confer *in personam* jurisdiction. *Lawrence v. Blackwell* (D.C.Ga. 1969), 298 F.Supp. 708, 711 (emphasis added).[9] To employ an agency theory for the purpose of establishing *in personam* jurisdiction is a result *Braden* never contemplated. As we observed in *Word v. State of North Carolina* (4th Cir. 1969), 406 F.2d 352, 357:

> " * * * [A]n action in a district court in the state of detention would be met with jurisdictional problems as well as * * * practical difficulties * * *. In their petitions in the Eastern District of Virginia, [petitioners] named as the respondents the State of North Carolina and one of its law enforcement officials, neither of which could be served with process in Virginia. The actions were properly dismissed for want of jurisdiction. If the Virginia warden had been the named respondent, there would remain a jurisdictional problem. While he is acting for North Carolina in holding these prisoners under the detainers, he owes North Carolina no duty to defend his authority. His duty of loyalty is exclusively to Virginia. While he would be expected to notify North Carolina of the pendency of the action, he would not be expected to do more, for the action in every practical and substantive sense is one against North Carolina or its officials, no one of whom is suable in his official capacity or subject to process in Virginia."

*See also Williams v. Commonwealth of Pennsylvania* (D.C.Mo.1970), 315 F.Supp. 1261, 1263–64.[10]

The mere fact that the District Court of North Carolina had both subject matter and *in personam* jurisdiction to adjudicate the impact of a detainer on the prisoner's status in North Carolina did not justify it in attempting to exercise *in personam* jurisdiction to pass on the right and power of the States of Georgia and Louisiana to try the petitioner for offenses committed in those States. A fundamental distinction exists between an attack on the *validity* of a detainer on speedy trial grounds and an attack on the *effect* of a detainer on speedy trial grounds. The former is an assault on the detainer's underlying criminal charges or conviction while the latter deals with the adverse impact created by the immediate custodian's imposition of a special "form of custody" on the prisoner as a result of the filing of the detainer. The validity of the detainer addresses itself to matters of concern in the demanding state; the effect given to a detainer addresses itself to matters of concern in the confining state. This difference has long served as justification for courts to develop special procedures for dealing with prisoner challenges to the validity of a detainer as

---

**9.** Cited approvingly in *McEachern v. Henderson* (5th Cir. 1973), 485 F.2d 694, 696.

**10.** Even were we to assume that the States of Georgia and Louisiana were amenable to process by service on the North Carolina warden acting as their agent for service of process, the Court's exercise of *in personam* jurisdiction would still be without justification. This is so because the North Carolina warden was never served with the petition in his representative capacity as an alleged agent of the States of Georgia and Louisiana or otherwise. At a minimum, service on the immediate custodian as an agent for the demanding state would be a condition precedent to any claim under an agency theory for the exercise of *in personam* jurisdiction over Georgia and Louisiana.

contradistinguished to an attack on the detainer's adverse effect. *See, e. g., McEachern v. Henderson, supra* (485 F.2d 694); *Bedwell v. Harris* (10th Cir. 1971), 451 F.2d 122; *Baity v. Ciccone* (D.C.Mo.1974), 379 F.Supp. 552; *Weiss v. Blackwell* (D.C.Ga.1969), 310 F.Supp. 360; *Lawrence v. Blackwell* (D.C.Ga. 1969), 298 F.Supp. 708; *Pollard v. State* (1973), 128 Ga.App. 470, 197 S.E.2d 158.

*Nelson v. George, supra,* gave frank recognition to this distinction and difference in treatment. There a California District Court had refused to exercise jurisdiction over a California prisoner's attack on a North Carolina conviction and detainer. The Ninth Circuit,[11] due in large measure to the intervening decision of the Supreme Court in *Peyton v. Rowe* (1968), 391 U.S. 54, 88 S.Ct. 1549, 20 L.Ed.2d 426, reversed, holding that the California District Court had jurisdiction to entertain the prisoner's petition challenging both the validity of the North Carolina judgment and the effect of the detainer on petitioner's custodial classification. In its carefully worded holding, the Supreme Court affirmed the judgment of the Court of Appeals only to the extent that it found "jurisdiction in the District Court to consider respondent's claims *with respect to the impact of the detainer * * *.*"[12] By rejecting *sub silentio* the Ninth Circuit's reasoning that the exercise of jurisdiction over the California custodian, acting as agent for North Carolina, conferred jurisdiction on the California District Court over challenges to both the validity and effect of the detainer, the Supreme Court in *Nelson* specifically preserved intact the distinctions inherent in the two challenges. *Braden,* although establishing concurrent subject matter

jurisdiction in either forum, neither obliterated this distinction nor obviated the practical necessity for the different treatment accorded to prisoner challenges to the validity of foreign detainers based on those distinctions. *See McEachern v. Henderson, supra* (485 F.2d at 696); *Baity v. Ciccone, supra* (379 F.Supp. at 556).

■ Principles of comity and federalism command that the Court restrain itself to petitioner's only complaint over which the federal district courts of North Carolina have both subject matter and *in personam* jurisdiction, *to wit,* the release of any adverse effects of the detainers on the conditions of his confinement as a North Carolina prisoner. In that connection, *it can and may adjudge only the validity of the underlying charges as they form a basis for the conditions of his confinement in North Carolina, but not the validity of those charges as a basis for prosecution in the States of Georgia or Louisiana.* The situation is analogous to that involved in an attack on a local sentence claimed to have been unconstitutionally influenced by an uncounseled conviction in another state. Some courts have held that the sentencing court can and should decide whether the foreign conviction was invalid because it was uncounseled, but those authorities so holding emphasize that while the sentencing court may for purposes of its own sentence pass on the validity of the foreign conviction, its "action [in so doing] will leave standing the conviction" in the foreign state itself, and, if the prisoner wishes to invalidate the foreign conviction, he must do so by resort to the foreign jurisdiction. *See Craig v. Beto* (5th Cir. 1973), 458 F.2d 1131, 1134.[13]

---

11. *George v. Nelson* (9th Cir. 1969), 410 F.2d 1179.

12. 399 U.S. at 230, 90 S.Ct. at 1967 (emphasis added).

13. *See, also, Weiss v. Blackwell, supra* (310 F.Supp. at 363):

"At the hearing this Court will decide if the state has made a diligent, good-faith effort to bring the petitioner to trial. Prison officials should not be called upon by the prisoners to make a determination of the reasonableness of a state's delay. The *hearing* will *only consider* the *restrictions* imposed *at the federal prison under the state detainer, not* the underlying *state criminal charges.* (As to these charges, the prisoner must pursue his remedies in state court to secure a speedy trial or to reverse any conviction tainted by the passage of an unrea-

*Baity v. Ciccone, supra,* presented a problem similar to that posed in this appeal and, in our opinion, reached the correct result. There the prisoner-petitioner, confined within the jurisdiction of the Missouri District Court, sought a writ of habeas corpus to enjoin his federal custodian from relinquishing his custody to Colorado authorities to be tried on pending Colorado criminal charges. He asserted as grounds for the writ's issuance the denial of his right to a speedy trial by Colorado. Characterizing the suit as a challenge to the validity of the Colorado detainer, the Court concluded: [14]

" * * * [I]n order to possess jurisdiction in a case involving a challenge to an untried criminal charge on which a detainer is based, a federal district court must possess the power to grant relief, which would entail possessing the power to direct *in personam*, that the pending charge be dismissed. However, a federal district court in the state and district of confinement simply has no state officer within its jurisdiction whom it can direct to dismiss the pending charges, and there is no way of enforcing any writ to that effect which might be issued.

\* \* \* \* ⸮ \* \*

"Clearly, the exercise of jurisdiction to consider a challenge, by means of federal habeas corpus, must be made in the state and district from which the detainer issued and in which the underlying criminal charge is pending."

The Eighth Circuit has since adopted Judge Becker's reasoning in *Baity* by affirming his earlier, unreported opinion reaching the same result under identical circumstances. *Wingo v. Ciccone* (8th Cir. 1974), 507 F.2d 354. In *Wingo* a federal prisoner confined in Missouri sought on speedy trial grounds to eliminate the adverse effects of three foreign

detainers on the conditions of his confinement and to enjoin the demanding states from prosecuting him on the criminal charges underlying the detainers. In rejecting the prisoner's claim for broad injunctive relief, the Court held (507 F.2d at 357):

"The issue and the relief granted in the instant proceeding have properly been limited to elimination of the alleged punitive consequences which abide with petitioner in his day-to-day federal imprisonment as a result of the detainers lodged against him which are based on state criminal charges lying dormant pending his release.

\* \* \* \* \* \*

" * * * [To grant him the severe remedy of outright dismissal on the state charges] would be an unjustifiable federal interference with [the demanding states'] judicial enforcement of their criminal laws. On the contrary, as this case is jurisdictionally presented, the District Court reached the outer limits of its power to coax prompt state resolution of the charges."

 Without expressing an opinion on the merits of petitioner's speedy trial claims as they relate to the charges pending in Georgia and Louisiana, we hold in conformity with the rulings in *Wingo* and *Baity,* that the appropriate forums in which the petitioner may challenge the validity of the Georgia and Louisiana charges are the federal district courts in the demanding states. *McEachern v. Henderson, supra* (485 F.2d at 696); *Reed v. Henderson* (5th Cir. 1972), 463 F.2d 485, 486; *Baity v. Ciccone, supra* (379 F.Supp. 552); *Williams v. Commonwealth of Pennsylvania, supra* (315 F.Supp. at 1264). And this is particularly true in this case where the action, so far as the States of Georgia and Louisiana are concerned, violates the command of the Eleventh Amendment—and, if the

sonable delay in trial, before the prisoner may go into a federal district court in *that* state to seek relief.)" (Emphasis in opinion).

14. 379 F.Supp. at 556 and 558.

action could be considered as against the individual prosecutors, though unnamed, in those States, the District Court would be unable to enforce its decree either directly or under the Full Faith and Credit Clause because of the want of *in personam* jurisdiction.[15]

Accordingly, we exercise only that jurisdiction as was acquired by personal service and grant only only that relief which we are capable of delivering, i. e., that the North Carolina custodian be directed to remove the Georgia and Louisiana detainers. We reverse the remaining portions of the District Court's order purporting to bar Georgia and Louisiana authorities from prosecuting petitioner on the charges underlying their detainers and remand petitioner's challenge to the validity of those charges to the District Court with instructions that they be dismissed without prejudice to petitioner's raising his claims in the appropriate courts of Louisiana and Georgia.

Affirmed in part, reversed in part.

WINTER, Circuit Judge (concurring in part and dissenting in part):

With the majority, I agree that the record in this case discloses that Georgia and Louisiana have denied Norris's right to a speedy trial, and that the district court correctly so decided and properly ordered North Carolina to disregard the detainers filed by those states. But I cannot agree that the district court lacked jurisdiction to order Georgia and Louisiana to give effect to that ruling and that it had jurisdiction only to re-

quire North Carolina to disregard, for North Carolina's purposes, the two detainers. In my view, this result which the majority reaches is supported neither by precedent nor by principles of sound judicial administration. Moreover, if North Carolina should be ordered to disregard the detainers for North Carolina's purposes, it should also be specifically ordered not to give Georgia and Louisiana the notice of Norris's release date which they require. In these particulars, I respectfully dissent.

I.

The facts are set forth fully in the two opinions of the district court. Norris v. State of Georgia, 357 F.Supp. 1200 (W.D. N.C.1973); opinion of September 24, 1973 (unreported). Since the panel is in agreement as to the merits of Norris's claims—at least to the extent of North Carolina's obligation to disregard the demands of Georgia and Louisiana, except possibly for notice [1]—I will not repeat them nor discuss why I think the district court's conclusions were eminently correct. Rather, I will turn directly to the question of the district court's jurisdiction to quash the Georgia and Louisiana prosecutions for denial of Norris's constitutional rights. As the majority correctly perceives, the question of jurisdiction is one of *in personam* jurisdiction— whether Georgia and Louisiana were properly before the district court because service had been obtained on them.

Service was accomplished, as it usually is in habeas cases, by the issuance of a

---

15. *See,* 4 Wright & Miller, Federal Practice and Procedure, § 1063, p. 204 (1969):

"Although it is important to distinguish among the concepts of subject matter jurisdiction, venue, jurisdiction over the person, and service of process, *it also should be kept in mind that these subjects are intimately related and that all four requirements must be satisfied in every case.*" (Emphasis added)

1. The position of the majority on the question of whether North Carolina is obliged to meet the notice requirements of Georgia and Louisiana detainers is obscure. It makes no specific mention of the problem, but it relies on *Wingo*

*v. Ciccone,* 507 F.2d 354 (8 Cir. 1974), and *Baity v. Ciccone,* 379 F.Supp. 552 (W.D.Mo. 1974), in which both courts indicated that a detainer could be effective for "notice purposes" without being effective generally. I would think it illogical to say that North Carolina may not give the detainers here the usual effect which it gives detainers, but that it should give the detainers effect to the extent of giving Georgia and Louisiana notice of the date of Norris's planned release. Thus, if I were to join in the majority's holding, I would be specific in saying that North Carolina was prohibited from giving effect to the "notice purposes" of the detainers.

show cause order from the district court to the Attorney General of the state whose authorities had the prisoner in custody—in this case, the Attorney General of North Carolina. The initial show cause order was issued November 22, 1972. In its order of April 6, 1973, holding that it had jurisdiction of the case and that Norris had alleged a meritorious cause of action, the district court directed defendants, including Georgia and Louisiana, to show cause why the Georgia and Louisiana detainers should not be stricken and "why the prosecuting authorities of Georgia and Louisiana should not be permanently restrained from prosecution . . . because of illegal delay . . . ." The order did not provide how it was to be served, but the docket entries show that copies were mailed to the Attorneys General of North Carolina, Georgia and Louisiana, presumably at the instance of the clerk of the district court.

I would conclude that Norris's custodians in North Carolina—whether the warden or his representative, the Attorney General—became the agents of the states of Georgia and Louisiana by receiving and regarding as valid the detainers filed by those states. Therefore, service on the North Carolina Attorney General of a petition for a writ of habeas corpus attacking the detainers, their effects, and the validity of the pending proceedings out of which they were issued, sufficed to establish *in personam* jurisdiction over the appropriate custodial authorities of all three states.

## II.

Before our decision in *Word v. North Carolina,* 406 F.2d 352 (4 Cir. 1969), and the subsequent Supreme Court holding in *Braden v. Judicial Circuit Court of Kentucky,* 410 U.S. 484, 93 S.Ct. 1123, 35 L.Ed.2d 443 (1973), which modified *Word* by adopting the views set forth by Judge Soboloff in his separate opinion in *Word,* 406 F.2d at 364–66, there could be little question that Norris, if he desired to question the validity of the detainers, could seek a writ of habeas corpus only in North Carolina. This was so because *Ahrens v. Clark,* 335 U.S. 188, 68 S.Ct. 1443, 92 L.Ed. 1898 (1948), held flatly that habeas corpus could be sought only in the district of confinement. In *Word,* the majority of this court sought to discard *Ahrens;* but in *Braden* the Supreme Court reaffirmed the vitality of *Ahrens,* although it modified the *Ahrens* holding to permit a prisoner, confined in one state, to seek habeas corpus in another state which had lodged a detainer against him in the state of his confinement on the ground that the former had denied him the right to a speedy trial. It is thus clear that, prior to *Word* and *Braden,* Norris's only forum would have been North Carolina, his place of confinement. Under that state of the law, to conclude that Norris could not have litigated his rights, unless by some fortuity he might have served an official of the states lodging the detainer who was physically present in North Carolina, would for practical purposes have denied him any remedy even for a case of overwhelming merit.

Under *Braden,* which superseded *Word,* Norris's right is established to seek habeas corpus in North Carolina on the one hand, or Georgia and Louisiana on the other hand, subject, of course, to the right of the district court in North Carolina to transfer any case filed there to either Georgia or Louisiana on the theory of *forum non conveniens.*[2] The

---

**2.** Footnote 15 in *Braden,* 410 U.S. at 499, 93 S.Ct. at 1131, says as much:

Nothing in this opinion should be taken to preclude the exercise of concurrent habeas corpus jurisdiction over the petitioner's claim by a federal district court in the district of confinement. But as we have made clear above, that forum will not in the ordinary case prove as convenient as the district court in the State which has lodged the detainer. Where a prisoner brings an action in the district of confinement attacking a detainer lodged by another State, the court can, of course, transfer the suit to a more convenient forum. 28 U.S.C. § 1404(a) [28

majority, however, concludes that he should be denied full relief in any of the three possible forums. I think this illogical.[3]

While *Braden* unquestionably gives Norris the right to seek habeas corpus in Georgia and Louisiana, it is significant that *Braden* does not require Norris to file in the latter states. The Court said in *Braden,* with regard to the basic jurisdictional statute, 28 U.S.C. § 2241(a):

> Read literally, the language of § 2241(a) requires nothing more than that the court issuing the writ have jurisdiction over the custodian. So long as the custodian can be reached by service of process, the court can issue a writ "within its jurisdiction" requiring that the prisoner be brought before the court for hearing on his claim, or requiring that he be released outright from custody . . .. 410 U.S. at 495, 93 S.Ct. at 1130.

In the instant case, Norris's immediate custodian was the North Carolina warden, and he does not question that service on the Attorney General of North Carolina was in effect service on him.

*Braden* also expressed the concept which reinforces my view that service on the North Carolina warden alone gave the district court *in personam* jurisdiction over Georgia and Louisiana. The concept is one of agency. In a fact situation differing from the instant case only in that *Braden* sought habeas corpus in the state from which the detainer issued, while Norris sought habeas corpus in the state of confinement, the Court said:

The overruling of *McNally v. Hill* . . . made it possible for prisoners in custody under one sentence to attack a sentence which they had not yet begun to serve. And it also enabled a petitioner held in one State to attack a detainer lodged against him by another State. *In such a case, the State holding the prisoner in immediate confinement acts as agent for the demanding State,* . . .. (Emphasis added.) (Citation and footnote omitted.) 410 U.S. at 498–99, 93 S.Ct. at 1131.

I have little doubt but that the detaining North Carolina authority acted as agent for the two other states. He kept custody of Norris for them as well as for North Carolina.[4] Exacerbated conditions of confinement were inflicted on Norris because of their detainers. Whether or not Georgia and Louisiana intended that effect of their detainers is immaterial. The fact is that by lodging the detainers the two states had continuing and not one-time effects on Norris. The North Carolina custodian did not cause these effects; he was the medium through which they reached Norris. He was, in short, the agent of the states which, through lodging the detainers, affected Norris.

Treatment of the North Carolina custodian as agent for Georgia and Louisiana, including their agent for service of process, finds additional support in *Strait v. Laird,* 406 U.S. 341, 92 S.Ct. 1693, 32 L.Ed.2d 141 (1972). There, an Army reservist, not on active duty, who was residing in California and attending school there, sought a writ of habeas corpus to

---

U.S.C.A. § 1404(a) ]. *Hoffman v. Blaski,* 363 U.S. 335, 80 S.Ct. 1084, 4 L.Ed.2d 1254 (1960).

The reverse, i. e., transfer of a petition for a writ of habeas corpus filed in the state of detainer to the state of confinement, is also permissible. In *Braden,* 410 U.S. at 500, 93 S.Ct. at 1132, the Court stated, "in many instances, the district in which petitioners are held will be the most convenient forum for the litigation of their claims."

**3.** Of course, under the majority's holding, Norris could require Georgia and Louisiana to

quash their respective prosecutions and withdraw their detainers if he proceeds successfully in each of those places. But I would assume that under the majority's holding he would be required to proceed also in North Carolina in the event that North Carolina should decline to give effect to the withdrawal.

**4.** The North Carolina authority also acts as agent for New York which has lodged a concurrent commitment order with him. The validity of this order, however, was not attacked.

effect his discharge as a conscientious objector. Strait's military records and commanding officer were in Indiana, but Strait sought the writ in California where he was given an administrative hearing. The Court sustained his right to sue in California and to obtain there an adjudication of the merits of his case. The Court pointed out that all face-to-face contact between Strait and the military took place in California. It concluded that "to say that Strait's custodian is amenable to process only in Indiana—or wherever the Army chooses to locate its recordkeeping center . . . —would be to exalt fiction over reality." 406 U.S. at 344, 92 S.Ct. at 1695.

If Strait's actual custodian was in Indiana, jurisdiction over him could have been obtained only on the theory that the custodian's agents were present in California, and service on these agents was service on the custodian.[5] No less, it seems to me, were Georgia and Louisiana present in North Carolina in the instant case. By analogy, if service on the local representative in *Strait* gave the California district court *in personam* jurisdiction, no less should service on the North Carolina custodian accomplish the same result for the North Carolina district court.

In addition to rejecting the agency theory that I would apply, the majority asserts that the district court's exercise of jurisdiction over the states of Georgia and Louisiana was legally objectionable on the dual grounds that the Eleventh Amendment precludes joinder of the states themselves, and that the attempted joinder of the Attorneys General of Georgia and Louisiana was a legal nullity because they are not the prosecuting officials of the two states in charge of prosecuting Norris.

5. Indeed, the Court said, "[t]he concepts of 'custody' and 'custodian' are sufficiently broad to allow us to say that the commanding officer in Indiana, operating through officers in California in processing petitioner's claim, is in California for the limited purposes of habeas corpus jurisdiction." 406 U.S. at 345–46, 92 S.Ct. at 1696.

I see no Eleventh Amendment problem. Of course Norris, like many habeas corpus petitioners in the district courts throughout this circuit, joined as respondents the states whose actions contributed to his custody. The district court properly afforded the *pro se* pleading a liberal construction and appropriately treated as named defendants the prosecuting authorities of Georgia and Louisiana. Such construction obviated any Eleventh Amendment problem. Since *Ex parte Young,* 209 U.S. 123, 28 S.Ct. 441, 52 L.Ed. 714 (1908), it has been well settled that the Eleventh Amendment does not bar the exercise of federal jurisdiction to enjoin state officers from carrying out unconstitutional acts. Indeed, in that case it was said:

This supreme authority [federal jurisdiction to enjoin state officers from carrying out unconstitutional acts] which arises from the specific provisions of the Constitution itself, is nowhere more fully illustrated than in the series of decisions under the Federal habeas corpus statute . . . in some of which cases persons in the custody of state officers for alleged crimes against the state have been taken from that custody and discharged by a Federal court or judge, because the imprisonment was adjudged to be in violation of the Federal Constitution. The right to so discharge has not been doubted by this court, and *it has never been supposed that there was any suit against the state by reason of serving the writ upon one of the officers of the state in whose custody the person was found.* (Emphasis supplied.) 209 U.S. at 167–68, 28 S.Ct. at 457.

Nor do I see any problem about the validity of service on the Attorneys General of Georgia and Louisiana, or lack of service on local prosecuting officials.

In a footnote, the Court also said:
Strait's commanding officer is "present" in California through his contacts in that State; he is therefore "within reach" of the federal court in which Strait filed his petition. 406 U.S. at 345 n. 2, 92 S.Ct. at 1695 n. 2.

Unquestionably it was a courtesy for the district court (or its clerk) to mail a copy of the district court's April 6, 1973, order to the Attorneys General to insure that they, as the ranking legal officers of the states, had actual knowledge of what the district court had decided and the order it had entered against each state. But actual service on them, or the governors of the two states, or other prosecuting officials of the two states, was not a legal necessity. Service on Norris's current custodian was a legal necessity. It was accomplished by service on his representative, the Attorney General of North Carolina, and the validity of that service is unquestioned. It matters not that, in responding to the suit, the North Carolina custodian did not concede that he acted as agent for the other two states, as well as for himself and North Carolina. Under the facts and law, he was the agent of the prosecuting officials, and *in personam* jurisdiction was obtained over them by service on him.

### III.

I think that *Braden* is both a decision on jurisdiction and on venue. It decides only that the district court in the state issuing a detainer has habeas corpus jurisdiction to decide the validity of the detainer even though the prisoner is not confined within that court's territorial jurisdiction. *Braden* also indicates that the most convenient forum in which to litigate the validity of the detainer is usually the state from which the detainer issued. But that is not invariably true. And when it is not true, *Braden* recognizes, both jurisdiction and venue may lie in the state of confinement.

Such a rule is eminently logical because it is rarely possible in the state of confinement to adjudicate the validity of the *effect* of the detainer without litigating the validity of the detainer. Only in the exceptional case where a prisoner claims some irregularity in the processes by which the state of confinement gives effect to the detainer would the validity of the detainer not be in issue. Ordinarily, as in the case at bar, any complaint about the effect of the detainer stems from an attack on its underlying validity. *Braden* contemplates deciding the appropriate venue for such attacks according to the principle of *forum non conveniens.* By its failure to recognize this aspect of *Braden,* the majority freezes venue considerations into inflexible jurisdictional requirements and destroys the very flexibility that *Braden* envisions.

In the instant case, I think that the district court should be affirmed in declining to transfer the case to Georgia or Louisiana or to. insist upon the institution of new litigation there. Louisiana did not ask for a change of venue. Georgia advanced no compelling reason for a change of venue, such that denial of a transfer constituted an abuse of discretion.

### IV.

*Nelson v. George,* 399 U.S. 224, 90 S.Ct. 1963, 26 L.Ed.2d 578 (1970), does not authorize the dichotomy that the majority erects between an attack on the *effect* of the detainer and the *validity* of a detainer. As I have said, I think the distinction illogical; the lack of judicial efficiency in requiring two trials in the usual case (three in the instant case) is also manifest. More importantly, I think that *Nelson v. George* was correctly characterized by Mr. Justice Harlan in his concurring opinion in the case:

> . . . I do not understand the Court to suggest that respondent's failure to exhaust state remedies with respect to his claim that California is giving a constitutionally impermissible effect to his North Carolina conviction, rendered it improper for the federal courts to consider his challenge to the validity of the North Carolina conviction to the extent that he had exhausted North Carolina remedies with respect thereto.

399 U.S. at 230, 90 S.Ct. at 1967. Of course *Nelson* required an allegation that the North Carolina conviction affected confinement in California for the California district court to have jurisdiction, but it did not limit the exercise of juris-

diction by the California court when state remedies were exhausted. I think that those courts which construe *Nelson* as supporting a limitation of the exercise of jurisdiction by a court of the state of confinement are in error; *Shelton v. Meier*, 485 F.2d 1177 (9 Cir. 1973), supports my construction.[6]

In sum, I think that service of process on the North Carolina official in charge of Norris's immediate custody was service on Georgia and Louisiana since the North Carolina official restrained Norris, in part, at their request and thus was their agent for purposes of service of process in an action attacking the validity of their acts. For the same reason, Georgia and Louisiana were "present" within the geographical jurisdiction of the district court. Therefore the district court had jurisdiction to require them to comply with its conclusion that Norris had been denied his right to speedy trials by those states.

---

**6.** See also *Dillworth v. Barker*, 465 F.2d 1338, 1341 (5 Cir. 1972), in which the court said that the district court in the receiving state of a parolee, whose parole was granted by another state, has jurisdiction over his habeas petition since he was physically present in the receiving state. This situation is analogous to Norris's; as I would hold in instant case, the *Dillworth* court suggested that the "exercise of this jurisdiction may be withheld . . . for reasons of *forum non conveniens*," but did not dispute the district court's power to exercise jurisdiction.