**James LYONS, Petitioner,**

v.

**Jeffrey CLARK, Respondent.**

**Civ. A. No. 88–0330–AM.**

United States District Court,
E.D. Virginia,
Alexandria Division.

Aug. 24, 1988.

James Lyons, Petersburg, Va., pro se.

Paula P. Newett, Asst. U.S. Atty., Alexandria, Va., for respondent.

## MEMORANDUM OPINION

ELLIS, District Judge.

### Introduction

James Lyons, a federal inmate, brings this application for a writ of *habeas corpus* pursuant to 28 U.S.C. § 2241 on the ground that his transfer from Walpole State Prison in Massachusetts to federal facilities in Pennsylvania and Virginia denied him the right of effective access to the courts. Petitioner claims the transfers violated federal regulations, Bureau of Prison policies and a liberty interest arising from federal regulations encouraging prisoners to maintain community and family ties. In their response to the petition, respondents assert that the Bureau of Prisons properly exercised its broad authority to transfer petitioner, that petitioner's right to appeal was not infringed and that no regulation created for petitioner a protected liberty interest which would require pre-transfer due process protections.

In rebuttal, petitioner has filed a traverse, a memorandum in support, and two motions for summary judgment accompanied with affidavits. On consideration of the pleadings and supporting materials filed by the parties, the Court concludes that Lyons' claims are without merit. Summary disposition based on the record is appropriate because the materials submitted conclusively show that Lyons is not entitled to relief. *See Raines v. United States*, 423 F.2d 526 (4th Cir.1970) (disposition of petition based on expanded record including response filed by the United States is an appropriate procedure where the credibility of witnesses is not at issue). Accordingly, summary judgment is entered in favor of the respondent and this action is dismissed.

### Findings of Fact

Petitioner was admitted to the United States Penitentiary, Lewisburg, Pennsylvania on August 25, 1986, as a pre-trial detainee. He remained there until November 10, 1986 at which time he was released to state authorities for the resolution of state criminal charges. The following week, petitioner was returned to federal custody at Lewisburg. Five days later he was placed under the custody of the United States Marshal Service and placed in Walpole State Prison, Boston, Massachusetts pending trial on federal charges for possession of cocaine with intent to distribute and related firearm offenses. On June 26, 1987, petitioner was convicted of those charges in the United States District Court for the District of Rhode Island. Petitioner received an aggregate sentence of 40 years with a 20 year consecutive special parole term. The Judgment and Probation/Commitment Order entered by the district court recommended "Confinement in

this area pending appeal." *United States v. Lyons*, (D.R.I. June 26, 1987).

Petitioner was held at Walpole State Prison until after sentencing on October 13, 1987. On that day, Bureau of Prison officials classified petitioner as a level five security inmate and designated the level five federal penitentiary at Lewisburg, Pennsylvania as petitioner's place of incarceration. On November 24, 1987, petitioner's direct criminal appeal was dismissed by the Court of Appeals for the First Circuit. Two days later, on November 26, 1987, petitioner's security level was reclassified to level four and he was transferred to the Petersburg, Virginia, Federal Correctional Institute (FCI), a level four facility.[1]

On December 29, 1987, the Court of Appeals for the First Circuit vacated its dismissal order and reinstated petitioner's criminal appeal. Petitioner remained incarcerated at FCI–Petersburg. Since his incarceration at FCI–Petersburg, petitioner has been employed in prison industries earning approximately $7 to $10 per month in wages. From December 2, 1987 until March 21, 1988, petitioner has periodically expended funds from his prison account for postage stamps, photocopies and other items for personal hygiene.

### Conclusions of Law

The thrust of this petition is Lyons' argument that the transfers from Walpole to Lewisburg and then Petersburg violated his constitutional rights and denied him access to the court. Petitioner seeks injunctive relief in the form of a transfer to Walpole State Prison where, he claims, the physical proximity to the First Circuit Court of Appeals and the allegedly bountiful legal resources provided by the state of Massachusetts will enable him to keep abreast of the legal actions instituted by him in other jurisdictions. Petitioner further claims that the transfers violated the sentencing judge's recommendation that he be retained at Walpole State Prison pending the disposition of his appeal, violated certain regulatory and statutory provisions, violated Bureau of Prison policy and resulted in the effective denial of his right to access the courts.

■ Petitioner's claims are meritless. Inmates have no right, constitutional or otherwise, to be confined to any particular institution. *See Meachum v. Fano*, 427 U.S. 215, 96 S.Ct. 2532, 49 L.Ed.2d 451 (1976); *Ange v. Paderick*, 521 F.2d 1066 (4th Cir.1975). The authority to designate the place of incarceration is squarely within the broad discretion of the Attorney General of the United States. 18 U.S.C. § 4082.[2] The Attorney General has, in turn, delegated this power to the Bureau of Prisons. 28 C.F.R. § 0.96(c) (1987). The Supreme Court has implicitly acknowledged that the breadth of this discretion extends to transferring federal prisoners to any facility within the federal system. *See Carlson v.*

---

1. The penitentiary at Lewisburg and the Federal Correctional Institute at Petersburg are the most secure facilities within the Bureau of Prison Northeast Region. Petitioner's classification first as a level five security prisoner, and later as level four, required incarceration at one of these two facilities. These facilities are the closest prisons to Rhode Island meeting petitioner's custody requirement.

2. Pub.L. 98–473, Title II, Section 218(a)(3) enacted October 12, 1984 repeals this section effective November 1, 1986. The Savings Provisions of Pub.L. 98–473, Title II, c. II retains the applicability of this section to offenses committed prior to November 1, 1987. *See* 1984 U.S.Code Cong. & Adm. News, P. 3182. Since petitioner's offenses were committed before the closing date for the applicability of this provision, Section 4082 governs transfer rights. The transfer authority granted the Attorney General is delegated to the Bureau of Prisons. *United States v. Dragna*, 746 F.2d 457, 458 (9th Cir.1984), *cert. denied*, 469 U.S. 1211, 105 S.Ct. 1179, 84 L.Ed.2d 327 (1985). Although some courts have determined that Section 4082 gives the Attorney General unfettered authority to decide where to house federal prisoners, *In the Matter of Donald Gee*, 815 F.2d 41, 42 (7th Cir.1987), the Fourth Circuit interprets this section as conferring on the Attorney General "a discretionary power, to be interfered with only if exercised arbitrarily or capriciously." *Ange v. Paderick*, 521 F.2d at 1068 (citations omitted); *but see Kohler v. Nicholson*, 117 F.2d 344, 347 (4th Cir.1941) (federal prisoners acquire no vested right in confinement in any particular federal penal institution and Attorney General has full power to transfer prisoners from one federal penal institution to another).

*Green,* 446 U.S. 14, 24–25 n. 11, 100 S.Ct. 1468, 1474–1475 n. 11, 64 L.Ed.2d 15 (1980) (*dictum*). In the words of the Seventh Circuit, the Bureau of Prisons "has the discretion to transfer federal prisoners from one place of confinement to another at any time for any reason whatsoever or for no reason at all." *Brown–Bey v. United States,* 720 F.2d 467, 470 (7th Cir.1983) (citations omitted); *see also Goodman v. Keohane,* 663 F.2d 1044, 1047 (11th Cir. 1981) (*per curiam*). On these well-settled principles, petitioner's claim founders.

■■■ Nor does the sentencing order save petitioner's claims. It does not—indeed it could not—*order* that petitioner be incarcerated at Walpole State Prison or any other facility. Rather, the Judgment and Commitment Order merely *recommended* that petitioner remain confined "in this area" pending appeal. While recommendations of this sort are often honored and implemented, they are not mandatory; in the words of the Fourth Circuit, such a recommendation is "pure surplusage" because the authority to designate the place of confinement is exclusively the Attorney General's. *Ange v. Paderick,* 521 F.2d at 1068. Thus, the sentencing judge's confinement recommendation is no basis for habeas relief. Similarly, petitioner states no claim for habeas relief by invoking Rule 38, Fed.R.Crim.P. That Rule creates no right or entitlement; it does no more than allow the sentencing court to recommend confinement near the appeal venue to enable a party to assist in the preparation of an appeal.[3]

Moreover, due process does not require a hearing before a federal prisoner may be transferred, whether that transfer is for administrative or disciplinary reasons. *Brown-Bey,* 720 F.2d at 470. The Supreme Court has found that due process does not entitle state prisoners to pre-transfer hearings when the transfer results from either administrative or disciplinary reasons. *Olim v. Wakinekona,* 461 U.S. 238, 103 S.Ct. 1741, 75 L.Ed.2d 813 (1983). This is true for either interstate or intrastate transfer of state prisoners. Significantly, the holding of *Olim v. Wakinekona* has been expanded to confirm that pre-transfer hearings for federal prisoners are not required. *Brown–Bey,* 720 F.2d at 470; *see also Moody v. Daggett,* 429 U.S. 78, 88 n. 9, 97 S.Ct. 274, 279 n. 9, 50 L.Ed.2d 236 (1976).

■■■ Next, petitioner contends that the government violated his liberty interest when he was transferred away from his community. Specifically, petitioner claims that 28 C.F.R. § 540.40 gives rise to a liberty interest in receiving visits from family, friends and community groups. This claim is specious. Neither the regulation cited nor any other statute or regulation confers on petitioner a liberty interest to be incarcerated near his family or community. Dispositive by analogy is *Greenholtz v. Inmates of the Nebraska Penal and Correctional Complex,* 442 U.S. 1, 99 S.Ct. 2100, 60 L.Ed.2d 668 (1979). The *Greenholtz* Court interpreted a unique Nebraska statute requiring parole release of prisoners unless certain specific findings are made. Writing for the majority, Chief Justice Burger found that the mandatory language of the statute which required that eligible prisoners be released on parole "absent the requisite finding that one of the justifications for deferral exists" created a liberty interest in obtaining a favorable parole determination. *Id.* at 12, 99 S.Ct. at 2106. The then Chief Justice emphasized that whether the liberty interest is created relies on the mandatory or discretionary nature of the statutory language. *See* e.g., *Paoli v. Lally,* 812 F.2d 1489 (4th Cir.), *cert. denied,* — U.S. —, 108 S.Ct. 184, 98 L.Ed.2d 137 (1987). Measured by this standard, the regulation peti-

---

**3.** Petitioner's assertion that the Bureau of Prisons should have been aware that the litigation of his appeal was hampered by complex attorney problems is patently frivolous. The Bureau of Prisons is not required to inform itself on such matters; it is entitled to rely on court orders and directives. Petitioner's transfers were well within the discretion of the Bureau of Prisons and petitioner's subsequent successful petition to reopen his appeal based on the ineffectiveness of his counsel does not operate to invalidate the transfer which was legal when made.

tioner cites falls far short of what is required to create a liberty interest. The regulatory language on which petitioner relies[4] contains no mandatory language; at most it merely codifies Bureau of Prison *policy* fostering the maintenance of family and community ties. Petitioner also relies on Bureau of Prison Policy 5100.2 CN-8. Section 4 Part C recites that "[i]t is the policy of the Federal Bureau of Prisons to place each inmate in an institution that is appropriate in security level and is geographically as close to the anticipated release area as is possible and reasonable." Again, lacking here are command words such as "shall" or "must" or the type of structure found in the Nebraska parole statute which would create a liberty interest. *See Greenholtz*, 442 U.S. at 11, 99 S.Ct. at 2015 (the Board of Parole *shall* order the release of a prisoner unless certain factors justifying deferral exist). As Chief Justice Burger noted in *Greenholtz*, the concept of due process is flexible and depends in a particular situation "upon the need to serve the purpose of minimizing the risk of error." *Greenholtz*, 442 U.S. at 13, 99 S.Ct. at 2106 (citation omitted). The regulation and policy relied on by petitioner simply do not rise to the level required to create a liberty interest deserving of due process protection.

■ In pleadings subsequent to the petition, Lyons apparently asserts that the Bureau of Prisons improperly classified him a level five security inmate in October 1987. The Court notes in passing that even if this issue were more fully developed on the record, petitioner has failed to state sufficient reasons to except him from the general rule that classification decisions are discretionary with prison officials and will not be addressed by federal courts. In *Meachum v. Fano*, 427 U.S. 215, 96 S.Ct. 2532, 49 L.Ed.2d 451 (1976), the Supreme Court made clear its strong aversion to invoking the due process clause to govern day to day functioning of prisons. Federal courts should not involve themselves in routine discretionary decisions that are better left to prison officials. *Id.* at 228–229, 96 S.Ct. at 2540–2541. Petitioner's classification as level five and subsequent reduction to security level four do not appear to be arbitrary or unsupported. Petitioner was convicted of possession with intent to distribute cocaine and related firearm offenses[5] for which he received 40 years imprisonment. These offenses are serious and warrant a high security rating. Since the Bureau of Prisons classification is supported by the record, the Court rejects petitioner's claim.

■ The final issue raised by this petition is the claim that transfer from Walpole State Prison to the federal system adversely affected his right to access the court. Petitioner claims that officials at FCI–Petersburg denied him free postage stamps and free photocopies in abrogation of his right to access the court. This claim, too, fails. To begin with, inmates do not have unlimited rights to photocopies or photocopying machines. *See Gibson v. McEvers*, 631 F.2d 95 (7th Cir.1980); *Harrell v. Keohane*, 621 F.2d 1059 (10th Cir.1980). Moreover, Lyons, a self-admitted prolific litigant,[6] has failed to show how the lack of free photocopying has denied him access to the courts. To the contrary, his extensive litigation activities belie his claim. Petitioner has filed numerous documents in

---

4. The Bureau of Prisons encourages visiting by family, friends, and community groups to maintain the morale of the inmate and to develop closer relationships between the inmate and family members or others in the community.... The Warden may restrict inmate visiting when necessary to ensure the security and good order of the institution. 28 C.F.R. § 540.40 (1987)

5. Petitioner was convicted of possession of an unregistered firearm, possession of a firearm without a serial number and possession of a firearm by a person previously convicted of a

felony. 26 U.S.C. § 5861(i), 18 U.S.C. § 2, 18 U.S.C.App. § 1202(a)(1) and 18 U.S.C. § 2.

6. In the affidavit submitted in support of his traverse, petitioner indicates that "[d]uring this period [when he was incarcerated at Walpole and transferred to Lewisburg and Petersburg], I was very active in filing and litigating a number of complex civil suits against the various U.S. Attorneys and federal officials who were responsible for my pretrial treatment ..." (*Id.* at # 12).

this and other courts in connection with several cases.[7]

■ Petitioner's claim that he has been denied postage stamps is similarly without merit. Petitioner relies on 28 C.F.R. § 540.20(d) which provides for free postage stamps to indigent inmates for personal and legal mail. This regulation also allows the warden to impose restrictions on this privilege to prevent abuse. At all times during his incarceration at FCI–Petersburg, petitioner has been employed in prison industries and has made numerous purchases of postage stamps. The Court finds persuasive respondent's argument that based on petitioner's inmate account record, petitioner's financial status did not qualify him under the regulation for free postage stamps. On several occasions, petitioner made purchases of items other than postage stamps, compelling the conclusion that if petitioner had needed stamps he would have purchased them. Petitioner has not sufficiently supported his claim that he was denied free postage stamps when he requested them or that he was eligible for free stamps. Prisoners do not have an unlimited right to free postage stamps in connection with the right to access the courts. *Twyman v. Crisp*, 584 F.2d 352, 359 (10th Cir.1978). They may have such a right only if they can show they are indigent. *See Bounds v. Smith*, 430 U.S. 817, 824, 97 S.Ct. 1491, 1496, 52 L.Ed.2d 72 (1977) (dictum). Petitioner is not indigent.

In any event, the Court believes this claim is more properly a challenge to the conditions of confinement rather than to the validity or length of confinement and thus may not be appropriately brought as a *habeas corpus* claim. *See Preiser v. Rodriguez*, 411 U.S. 475, 93 S.Ct. 1827, 36 L.Ed.2d 439 (1973). While *Preiser* suggests that, under exceptional circumstances a prisoner challenging conditions of confinement may seek habeas relief, the Court does not find that petitioner has asserted the type of circumstances justifying such an extraordinary result. *See Lee v. Winston*, 717 F.2d 888 (4th Cir.1983), *aff'd on other grounds*, 470 U.S. 753, 105 S.Ct. 1611, 84 L.Ed.2d 662 (1985) (grant of habeas relief was vacated after prisoner sought relief under both 42 U.S.C. § 1983 and 28 U.S.C. § 2254 to prevent the state from forcing him to undergo surgery to remove a bullet from his chest). The Court also notes that petitioner brought these same two claims in a separate action recently dismissed on the merits by this Court. *Lyons v. Meese, et al.*, C.A. No. 88–332–AM (E.D.Va. Aug. 18, 1988).

### Conclusion

For the reasons stated above, the Court finds this petition without merit. Petitioner's transfer into the federal system did not violate any rule, regulation or statute, nor did it interfere with petitioner's constitutional right of access to the courts. The subsequent transfers within the federal prison system were the lawful exercise of Bureau of Prison discretion. Finally, petitioner's claim concerning denial of postage stamps and photocopies for his legal activities is without merit and has been previously considered and rejected by this Court in an unrelated action. Accordingly, judgment is hereby entered for the respondent and this action dismissed.

An appropriate order shall issue.

---

7. Petitioner has litigated at least three cases in this Court: *Lyons v. Meese, et al.*, C.A. No. 88–0569–AM (E.D.Va. July 12, 1988); *Lyons v. Meese, et al.*, C.A. No. 88–0332–AM (E.D.Va. Aug. 18, 1988) and this action. In addition, his filings in this Court reflect that he has filed actions in the Court of Appeals for the First Circuit and several district courts. *Lyons v. Powell*, 838 F.2d 28 (1st Cir.1988) (per curiam); C.A. No. 87–0294 and No. 87–0017 in the District of Rhode Island; C.A. No. 88–1200 in the District of Massachusetts; and C.A. No. 88–0892 in the District of Pennsylvania.