**Michael Anthony BOLDEN,
# 167784, Petitioner,**

v.

**Edward W. MURRAY, Director of the
Virginia Department of Corrections,
Respondent.**

**Civ. A. No. 2:93cv95.**

United States District Court,
E.D. Virginia,
Norfolk Division.

Jan. 5, 1994.

Michael Anthony Bolden, pro se.

Mark R. Davis, Office of the Atty. Gen., Richmond, VA, for respondent.

### OPINION AND FINAL ORDER

REBECCA BEACH SMITH, District Judge.

This matter was initiated by petition for a writ of habeas corpus under 28 U.S.C. § 2254. The matter was referred to a United States Magistrate Judge pursuant to the provisions of 28 U.S.C. § 636(b)(1)(B) and (C), Rule 72(b) of the Federal Rules of Civil Procedure, and Rule 29 of the Rules of the United States District Court for the Eastern District of Virginia for report and recommendation. Report of the Magistrate Judge was filed on June 29, 1993, recommending that the petition be denied and dismissed. By copy of the report, each party was advised of his right to file written objections to the findings and recommendations made by the Magistrate Judge. On July 12, 1993, this Court received petitioner's objections, styled Petitioners [sic] Motion in Objection to Magistrate Judges [sic] Report and Recommendation [hereinafter Petitioner's Objections].

Petitioner Bolden's habeas claim challenges both the validity and the effects upon his confinement of a detainer filed against him by the State of New York for parole violations. Bolden's first objection claims that a parolee's liberty interest is significant enough to require procedural protections under the Due Process Clause, citing the Supreme Court's holding in *Morrissey v. Brewer*, 408 U.S. 471, 92 S.Ct. 2593, 33 L.Ed.2d 484 (1972), in support of this contention. Petitioner correctly interprets *Morrissey* to the extent that the Supreme Court held that the revocation of parole requires a preliminary hearing at the time of the arrest for the parole violation, followed by a revocation hearing before the parole board. 408 U.S. at 485–88, 92 S.Ct. at 2602–04.

Petitioner fails, however, to recognize a critical distinction between the facts of his

case and those of *Morrissey*. Petitioner is presently incarcerated in Virginia for a criminal conviction completely unrelated to his New York parole, and the detainer filed against him is based on the Parole Warrant that the New York Parole Authority issued upon learning of the Virginia conviction. Bolden's parole has not yet been *revoked* by New York, but rather New York has merely taken the initial step in the parole revocation process by issuing a parole violator warrant and asking the VDOC to file it as a detainer against Bolden. *Morrissey*, on the other hand, involved a parolee whose parole was revoked by the parole board without a hearing. Invoking due process analysis techniques, the Court in *Morrissey* held that a parolee's interest in continued liberty is valuable enough to require due process protection in the form of a revocation hearing prior to the termination of that liberty. 408 U.S. at 482, 92 S.Ct. at 2600.

Because Bolden's New York parole has not been revoked but merely threatened, *Morrissey* does not control the resolution of this case. Bolden is entitled to a parole revocation hearing before New York revokes his parole, but he is not immediately entitled to such a hearing. *See Moody v. Daggett*, 429 U.S. 78, 97 S.Ct. 274, 50 L.Ed.2d 236 (1976) (prisoner incarcerated for another crime not entitled to prompt parole revocation hearing).

■ Bolden's convoluted second objection appears to attack the validity of the detainer, claiming that New York failed to "follow its own statutes by not lodging the detainer withinn [sic] 30 days" and that he received "no preliminary interview or hearing of any kind by Virginia Parolee [sic] or New York State Parole Authorities." Petitioner's Objections at 2. Petitioner fails to provide any citation in support of his contention that New York's statutes require it to lodge the detainer within thirty days, nor does he specify the date from which the thirty day period is to be measured. New York apparently has no such statute, and its existence is largely irrelevant to this case in light of the function served by a detainer. A detainer is a request filed by a criminal

justice agency with the institution in which a prisoner is incarcerated, asking the institution either to hold the prisoner for the agency or to notify the agency when release of the prisoner is imminent. *Moody v. Daggett*, 429 U.S. 78, 80–81, n. 2, 97 S.Ct. 274, 275–276, n. 2, 50 L.Ed.2d 236 (1976). The detainer has no real substantive value, functioning more as a courtesy to the requesting state by reminding the incarcerating state to hold the prisoner after he completes his sentence.

■ Bolden's second objection also appears to contend that the lodging of the detainer entitles him to an immediate preliminary hearing before either the Virginia or New York authorities. He further alleges that "the Parolee is entittled [sic] to a local hearing before being convicted of a crime." Petitioner's Objections at 2. Once again, Bolden has mischaracterized his status with the New York Parole Authority and the nature of the parole revocation process. Bolden does not challenge the Virginia conviction for which he is presently incarcerated, and he undoubtedly received the full panoply of procedural protections to which he was entitled before being convicted of this crime. The revocation of parole is not, however, "part of a criminal prosecution and thus the full panoply of rights due a defendant in such a proceeding does not apply to parole revocations." *Morrissey*, 408 U.S. at 480, 92 S.Ct. at 2599.

Bolden is not in custody for a parole violation. Rather, he is in custody for a crime that he committed in Virginia, which just so happens to violate the conditions of his release on parole from New York. The New York Parole Authority has not revoked Bolden's parole, has not taken custody of Bolden, has not deprived Bolden of any protected liberty interest. It has merely placed Bolden on notice that it intends to revoke his parole in the future, presumably upon his release from the VDOC. There is thus no need for a preliminary hearing on the parole violation, since the function of the preliminary hearing is to determine "whether there is probable cause ... to believe that the arrested parolee has committed acts that would constitute a violation of parole condi-

tions." *Morrissey* at 485, 92 S.Ct. at 2602. Inspired by the plight of an individual arrested and taken into custody solely on the basis of an alleged parole violation, the Supreme Court prescribed the preliminary hearing requirement. In the case of a parolee like Bolden, however, who has "already been convicted of and incarcerated on a subsequent offense, there is no need for the preliminary hearing which *Morrissey* requires...." *Moody v. Daggett,* 429 U.S. 78, 86 n. 7, 97 S.Ct. 274, 278 n. 7, 50 L.Ed.2d 236 (1976). The subsequent conviction itself provides probable cause to believe that the parolee has violated his parole. *Id.*

Bolden's real claim appears to be that, the Virginia conviction to the contrary, his actions are not violative of the conditions of his New York parole, and that he is entitled to an immediate parole revocation hearing before the New York parole authorities. He alleges that delaying the revocation hearing until after his release from the VDOC will prejudice his ability to present mitigating evidence, claiming that he will suffer "lost [sic] of witness [sic] that would submitted [sic] vauleable [sic] information to his case." Petitioner's Objections at 2.

Bolden's allegation is thus no more than a claim that he is entitled to a "prompt" parole revocation hearing. The Supreme Court rejected an identical claim in *Moody v. Daggett,* 429 U.S. 78, 97 S.Ct. 274, 50 L.Ed.2d 236 (1976). In *Moody,* the Court held that a detainer based on an outstanding parole violator warrant filed against an individual convicted of and incarcerated on a subsequent offense does not involve a loss of protected liberty. Distinguishing *Morrissey,* the Court identified the "execution of the warrant and custody under that warrant" as the point at which the parolee's liberty interest is terminated and procedural protections are re-

quired. *Moody,* 429 U.S. at 87, 97 S.Ct. at 278. The Court expressly held that "before the parolee is taken into custody as a parole violator.... there is no requirement for an immediate hearing." *Id.* at 86, 97 S.Ct. at 278. Bolden's present incarceration and consequent loss of liberty result from his 1989 Virginia conviction for attempted rape, not from the outstanding New York parole violator warrant, and he therefore is not entitled to any kind of immediate hearing on the parole violation.

Bolden's third and final objection states simply that the outstanding "detainer is having AN adverse effect upon his confinement" in the VDOC. Petitioner's Objections at 3. In the Report and Recommendation, the Magistrate Judge found that petitioner only conclusorily alleged that the detainer is adversely affecting his confinement. Because conclusory allegations are insufficient to provide a basis for habeas corpus relief, the Magistrate Judge recommended that this claim be denied. Magistrate Judge's Report and Recommendation, at 10, *citing Nickerson v. Lee,* 971 F.2d 1125 (4th Cir.1992). Petitioner's objection directly responds to this finding, however, and the documents attached to his objections do tend to show that the detainer is adversely affecting petitioner's confinement and eligibility for parole.

The VDOC "Adult Services Initial Inmate Classification" and the VDOC "Adult Services Reclassification Custody Scoring Sheet" both have categories entitled "Current Detainer." Attachments "A" and "B" to Petitioner's Objections. The VDOC gave petitioner the maximum number of points in the "Current Detainer" category, apparently as the result of the New York detainer, and it thus appears that the filing of the detainer is in fact adversely affecting petitioner's confinement inasmuch as the VDOC weighs a detainer heavily against an inmate when classifying his custody status.[1]

---

1. Petitioner received the maximum score of 5 for the "Current Detainer" category and a total score of 20 on the "Reclassification Custody Scoring Sheet," dated August 10, 1992. Attachment "B" to Petitioner's Objections. Based on the petitioner's submissions, the VDOC apparently uses this score to place inmates in a "custody

status" that determines, among other things, their eligibility to request a transfer. Petitioner's score of 20 places him in "C" custody status, the Maximum category on the Reclassification Custody Scale. *See* Attachments "C" and "D" to Petitioner's Objections.

Because the detainer apparently is adversely affecting Bolden's confinement, the key question is whether the adverse effect entitles him to any relief. As previously discussed, *Moody* and *Morrissey* combine to clearly indicate that Bolden is entitled to neither a preliminary hearing nor a revocation hearing from New York. New York does not have custody of Bolden, and the mere issuance of the parole violator warrant does not deprive Bolden of a liberty interest sufficient to invoke due process protections. Virginia does, however, have custody of Bolden, and the Virginia authorities are using the detainer as the basis for an adverse custody classification that, among other things, diminishes Bolden's chances for parole release.

A long line of decisions recognizes the strong interest that an individual incarcerated in one state has in resolving outstanding criminal charges of another state that result in the lodging of a detainer against him. *See, e.g., Braden v. 30th Judicial Circuit Court of Kentucky*, 410 U.S. 484, 93 S.Ct. 1123, 35 L.Ed.2d 443 (1973); *Norris v. Georgia*, 522 F.2d 1006 (4th Cir.1975). In fact, the Interstate Agreement on Detainers [IAD], a congressionally sanctioned interstate compact among forty-eight states, the District of Columbia, Puerto Rico, the Virgin Islands, and the United States, allows a prisoner incarcerated in one state to demand the speedy disposition of "any untried indictment, information, or complaint on the basis of which a detainer has been lodged against the prisoner" by another state. IAD, Art. III, codified in Virginia under Virginia Code § 53.1–210, and in New York under N.Y.Crim.Proc.Law § 580.20; *see also Carchman v. Nash*, 473 U.S. 716, 720–21, 105 S.Ct. 3401, 3403–04, 87 L.Ed.2d 516 (1985). The Supreme Court, however, has ruled that the scope of the IAD is limited to new criminal charges pending against a prisoner, and therefore it does not include probation or parole violation charges. *Carchman* at 726, 105 S.Ct. at 3406.

Under the IAD, prisoners incarcerated in one state who have had detainers filed against them by another state on the basis of untried criminal charges are statutorily entitled to demand that the criminal charges be resolved within 180 days of the filing of the detainer. Because of the statutory entitlement created by the IAD, the courts have not had to resolve the question of whether a prisoner is *constitutionally* entitled to have outstanding criminal charges resolved before the state of incarceration can use the detainer as a basis for adversely classifying the prisoner's custody status. In addition, the Supreme Court has never resolved the related issue, presented in this case, of whether a detainer based on a parole violator warrant can be used by the state of incarceration to adversely classify a prisoner.

▇ The Fourth Circuit has held that the state of incarceration may not adversely classify a prisoner on the basis of a detainer lodged against him concerning pending criminal charges in another state. *Norris v. Georgia*, 522 F.2d 1006 (4th Cir.1975). *Norris*, however, involved a North Carolina prisoner who was the subject of pending criminal charges in Georgia and Louisiana. That situation clearly differs from the one presented by Bolden, a Virginia prisoner who is the subject of a New York parole violator warrant. The New York parole violator warrant is based on Bolden's commission of the crime that resulted in his conviction and incarceration in Virginia. The Virginia convictions conclusively establish the parole violation. *See Carchman v. Nash*, 473 U.S. 716, 730–31, 105 S.Ct. 3401, 3408–09, 87 L.Ed.2d 516 (1985) (probation violation), *citing Morrissey*, 408 U.S. at 490, 92 S.Ct. at 2604 (parole violation). Thus, the concerns with the detrimental effects of unresolved criminal allegations that informed the Fourth Circuit's decision in *Norris* do not exist in the present case, where the parole violation has been conclusively established through the Virginia conviction.[2]

---

**2.** *But see Emanuel v. Witkowski*, No. 90–6573, 915 F.2d 1564, Unpublished Disposition (table, text in Westlaw), 1990 WL 148486 (4th Cir. 1990). On what would appear to be similar facts, the Fourth Circuit held the district court

should have considered petitioner's "claim challenging the adverse effects of the detainer on the conditions of his confinement. A federal district court in the state of confinement may entertain such a claim by habeas corpus." The Fourth

The dispositive issue in this case ultimately revolves around the basic due process analysis set forth in *Morrissey*. Under *Morrissey*, the initial step in due process analysis is to determine whether the individual has a "liberty or property" interest within the meaning of the language of the Fourteenth Amendment that entitles him to procedural protections. *Morrissey*, 408 U.S. at 481–82, 92 S.Ct. at 2600–01. If the individual is found to have such a liberty or property interest, the second step is to determine "what process is due" by weighing the government function involved with the private interest affected by the governmental action, and then responding flexibly to the demands of the particular situation. *Id.* at 483, 92 S.Ct. at 2601.

Application of this framework first requires classifying the nature of the interest that Bolden is claiming. Bolden's interest is in preventing Virginia from considering the detainer as an adverse factor in classifying his custody status. The VDOC, like most state correctional systems, utilizes its custody classification scheme to determine prisoner eligibility for transfers, work release programs, parole release, and other privileges. Since release eligibility is obviously the most desirable and most valuable classification category, it will be presumed that Bolden's claimed due process interest is in being deprived of parole eligibility.

Although *Morrissey* held that a parolee has a liberty interest in remaining free *on* parole, the Supreme Court has subsequently held that a prisoner has no such liberty interest in being released *to* parole. The Court's decision in *Greenholtz v. Inmates of the Nebraska Penal and Correctional Complex*, 442 U.S. 1, 99 S.Ct. 2100, 60 L.Ed.2d 668 (1979), sharply distinguished between parole revocation decisions and parole release decisions. In *Greenholtz*, a class action under 42 U.S.C. § 1983 challenging the Nebraska Board of Parole's procedures for making parole release decisions, the inmates claimed that "a reasonable entitlement is created whenever a state provides for the *possibility*

of parole" or when the language of the state's statute creates a legitimate expectation of parole, thereby invoking due process protections. *Id.* at 8–9, 99 S.Ct. at 2104–2105. The Supreme Court disagreed, noting that "[t]here is a crucial distinction between being deprived of a liberty one has, as in parole, and being denied a conditional liberty that one desires." *Id.* at 9, 99 S.Ct. at 2105.

The nature of the parole revocation decision is distinctly different from the discretionary parole release decision, and necessarily involves the consideration of distinctly different factors. Petitioner's objections fail to distinguish between the two types of decisions, however, and incorrectly assume that his present incarceration in Virginia is related to his release on parole in New York. While it appears true that Virginia is in fact using the New York parole warrant in such a way as to adversely affect petitioner's present confinement, disqualifying him from consideration from parole release, the actions of the respective state authorities are completely unrelated and entirely distinguishable. Virginia, having convicted the petitioner of attempted rape, has incarcerated him and classified him in a custody status that disqualifies him from parole release eligibility. That custody classification is partly based on the detainer filed by New York. New York has issued a parole warrant and asked Virginia that it be filed as a detainer against the petitioner, initiating but not completing the parole revocation process.

With regard to VDOC's actions, *Greenholtz* indicates that a state's holding out of "the *possibility* of parole provides no more than a mere hope that the benefit will be obtained," a hope unprotected by due process. *Greenholtz*, 442 U.S. at 11, 99 S.Ct. at 2106 (citation omitted). Virginia has given its prisoners only a "mere hope" that they might be released on parole, creating no liberty or property interest that requires procedural protections. *See also Gregory v. State of New York Parole Commission*, 496 F.Supp. 748 (M.D.Pa.1980) (lodging parole violator warrant as detainer, depriving pris-

Circuit cites *Norris,* the 1975 Fourth Circuit decision discussed *supra,* in support of this decision. *Norris,* however, involved a detainer based on an

untried criminal charge, not a detainer based on a parole violation.

oner of opportunity for release to half-way house, not violation of due process even without revocation hearing). Accordingly, Bolden's claim that he has been denied due process is DENIED.

The Court, having examined the petitioner's objections to the Magistrate Judge's Report, and having made *de novo* findings with respect to his objections, does hereby adopt and approve the findings and recommendations set forth in the report of the United States Magistrate Judge filed June 29, 1993, and it is, therefore, ORDERED that the petition be DENIED AND DISMISSED.

Petitioner may appeal from the judgment entered pursuant to this Final Order by filing a *written* notice of appeal with the Clerk of this court, United States Courthouse, 600 Granby Street, Norfolk, Virginia 23510, within thirty (30) days from the date of entry of such judgment. For the reasons stated in said report, the Court, pursuant to Rule 22(b) of the Federal Rules of Appellate Procedure, declines to issue a certificate of probable cause for appeal.

It is so ORDERED.