David Howard POSEY, Petitioner,

v.

Steven DEWALT, Warden, FCI Petersburg, Respondent.

No. Civ.A. 98–834–AM.

United States District Court,
E.D. Virginia,
Alexandria Division.

Dec. 13, 1999.

David Howard Posey, State Farm, VA, petitioner pro se.

Leslie Bonner McClendon, United States Attorney's Office, Alexandria, VA, for respondent.

## MEMORANDUM OPINION

ELLIS, District Judge.

Petitioner, a federal inmate proceeding *pro se*, filed this 28 U.S.C. § 2241 petition for a writ of habeas corpus, challenging the Bureau of Prisons' (BOP) decision to deny petitioner minimum custody status based on a Virginia state detainer filed against petitioner. Petitioner seeks his transfer from the federal institution where he is currently incarcerated, a low security facility, to a prison camp, a minimum custody facility. Respondent has filed a Response, arguing that the writ sought should not issue. This response will be treated as a Motion for Summary Judgment pursuant to Fed.R.Civ.P. 56. Petitioner has responded to respondent's arguments, and, accordingly, this matter is now ripe for disposition. For the reasons that follow, respondent's Motion for Summary Judgment must be granted, and this petition for a writ of habeas corpus dismissed.[1]

---

1. In reviewing a motion for summary judgment, courts must view the facts in the light most favorable to the party opposing the motion. *Porter v. United States Alumoweld Co.,* 125 F.3d 243, 245 (4th Cir.1997). Summary judgment is appropriate where "there is no genuine issue of material fact and the moving party in entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c); *Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). A "genuine" issue of material fact is present "if the evidence is such that a reasonable jury could ... return a verdict for the non-moving party." *Amos v. Maryland Dep't of Pub. Safety & Correctional Servs.,* 126 F.3d 589, 609 (4th Cir.1997). "When a motion for summary judgment is made and supported ... [by affidavits], an adverse party may not rest upon the mere allegations or denials of the adverse party's pleading, but the adverse party's response ... must set forth specific facts showing that

## I.

Petitioner has been incarcerated at the Federal Correctional Institution at Petersburg, Virginia, (FCI Petersburg) since January 9, 1998, where he is serving sentences on three federal convictions.

*Petitioner's Federal Convictions:*

On June 3, 1997, petitioner was convicted of conspiracy to commit wire fraud, possession of a firearm by a felon, and mail fraud in this Court. On October 30, 1997, petitioner was sentenced to a sixty-three month term of federal imprisonment. On October 30, 1998, pursuant to a Rule 35 motion by the government, petitioner's sentence was reduced to a term of thirty-six months of federal imprisonment. By virtue of credit earned for good conduct, petitioner is currently projected for release from his federal sentence on January 12, 2000.

*Petitioner's Virginia State Conviction:*

Petitioner's prior criminal record will not be reviewed here, save insofar as it relates to the claims raised in the instant petition. On December 3, 1987, petitioner was arrested in Fairfax, Virginia for Larceny/Theft in connection with stolen jewelry worth approximately $1,000. On May 6, 1988, petitioner was sentenced in Virginia state court (i) to a term of five years of imprisonment, all of which was suspended, (ii) to five years' probation conditioned on the completion of a drug treatment program, and (iii) ordered to pay $1,000 in restitution. On June 20, 1988, petitioner was placed into the Second Genesis Drug

Program in Maryland.[2] Four days later, he absconded from the program.

On July 19, 1988, a probation violation warrant for petitioner was issued by the Commonwealth of Virginia for his escape from the drug treatment program. On October 12, 1990, petitioner appeared with counsel in a Virginia state court for the adjudication of his probation violation, at which time he was sentenced to a five year term of imprisonment.[3] On September 18, 1992, after serving approximately two years of his five year sentence, petitioner was mandatorily paroled. He was provided with March 18, 1993 as a minimum date of release from supervision. At an unspecified date shortly after his parole release, petitioner absconded from his Virginia parole supervision. On December 2, 1992, a Virginia parole violation warrant was issued for petitioner. Petitioner has been in a parole violation status in Virginia since that date.

*The Detainer Lodged Against Petitioner:*

■ On February 2, 1998, approximately three months after petitioner arrived at FCI Petersburg, that institution received a letter from the Virginia Department of Corrections (VDOC), along with a certified copy of the 1992 parole violator warrant for petitioner. In its letter, VDOC requested that the warrant be filed as a detainer against petitioner, specifying that it would extradite petitioner.[4] That detainer was placed on file with the BOP and VDOC will be notified sixty to ninety days

there is a genuine issue for trial." Fed. R.Civ.P. 56(e).

2. It appears that this drug treatment program was intended to serve as a portion of petitioner's sentence for his 1987 theft conviction in Virginia state court as well as a 1987 theft conviction in the District of Columbia court system.

3. Respondent conjectures that the delay between the issuance of the warrant and petitioner's appearance in court resulted from petitioner's disappearance.

4. The Supreme Court has explained that a detainer, in this context, is:

> an internal administrative mechanism to assure than an inmate subject to an unexpired term of confinement will not be released from custody until the jurisdiction asserting a parole violation has had an opportunity to act in this case by taking the inmate into custody or by making a parole revocation determination.

*Moody v. Daggett,* 429 U.S. 78, 80–81, n. 2, 97 S.Ct. 274, 50 L.Ed.2d 236 (1976). When two autonomous jurisdictions are involved, including a federal and state jurisdiction, a detainer is a matter of comity. *See id.*

before petitioner's release from federal custody.

*Petitioner's Classification within The Bureau of Prisons:*

Petitioner is currently confined in FCI Petersburg, which maintains four levels of custody progressing from the lowest level of custody to the highest. These levels are community, out, in, and maximum. BOP Program Statement 5100.06, *Security Designation and Custody Classification Manual* (SDCCM).[5]

Petitioner has been classified by his team unit pursuant to BOP guidelines contained in the BOP Program Statement 5100.06, SDCCM. He was last classified by his unit on January 8, 1999. Although a straight computation of petitioner's custody and security levels suggested that his custody should be considered for an "Out" custody rather than an "In" custody, BOP staff determined that petitioner was in need of greater security than that afforded at a minimum security institution such as a camp, which does not have a perimeter security fence. Thus, the staff determined that petitioner is a "minimum security level" inmate with "In" custody, pursuant to the guidelines in BOP Program Statement 5100.06, *Custody Classification Form Instructions* BP–338. Thus, a "Greater Security" management variable was requested from and approved by the Mid–Atlantic Regional Office (MARO).[6]

Petitioner's VDOC parole detainer was used in scoring petitioner's security and custody levels. The detainer was given one point, as falling within the Lowest and Low Moderate Severity level, based upon the offense behavior in the underlying state criminal conviction for felony larceny. The approval form of petitioner's greater security management variable indicates that this variable was approved because of detainers on petitioner's file. As respondent explained in a response to petitioner's administrative appeal of this classification, "your poor response to community supervision and two detainers [including the VDOC detainer for absconding from supervision] make you a poor candidate for placement in a minimum security facility."[7]

Because petitioner is currently classified as "In" custody, he is ineligible, under BOP classification procedures, to transfer to a minimum security camp.[8] Petitioner's

---

5. An inmate assigned to community custody, the least secure housing assignment, is eligible for all housing outside the institution's perimeter, may work on outside details with minimum supervision, and is eligible to participate in community based programs. P.S: 5100.06, *Security Designation and Custody Classification Manual.* An inmate assigned to "out" custody may be eligible for work details outside the institution's perimeter with a minimum of two-hour intermittent staff supervision. *Id.* An inmate assigned to "in" custody is assigned to regular quarters and is eligible for all work assignments and activities under a normal level of supervision *but not for work details or programs outside the institution's secure perimeter. Id.* An inmate assigned to maximum custody is deemed to require continuous control and supervision.

6. Petitioner's case manager sent a July 10, 1998 memorandum to the Regional Director of MARO, in which she requested a greater security management variable for petitioner. As the rationale for that referral, petitioner's case manager indicated that;

[Petitioner] arrived at this facility on January 9, 1998. He is a minimum security level inmate with IN custody and a projected Good Conduct Time Release date of December 28, 2001. [Petitioner] has two detainers on file from the Virginia Department of Corrections, Richmond, Virginia, and the Montgomery County Police Department, Montgomery, Maryland. Therefore, a greater security management variable is being requested.

7. Petitioner filed grievances concerning his security assignment and his incarceration at FCI Petersburg. Petitioner's assignment to that institution, which concluded on September 30, 1998, was upheld at all levels of appeal.

8. An inmate must have at least "Out" custody to be placed in a camp and must have "community" custody for a halfway house placement.

management variable remained valid until July 22, 1999, at which time it was scheduled for review.[9]

## II.

Petitioner raises several related, but distinct, arguments that will be addressed individually.

A. *Virginia's Failure to Resolve Its Parole Violation Detainer Promptly Violated His Due Process Rights:*

In petitioner's first claim, he argues that the BOP improperly denied him minimum custody status, preventing his transfer to a prison camp, on the basis of an illegal parole violation detainer filed by the Commonwealth of Virginia. Specifically, petitioner argues that his due process rights are being violated because he has been deprived of a speedy adjudication of the Virginia parole warrant placed on him during his federal incarceration.

This claim is clearly without merit. In *Morrissey v. Brewer*, 408 U.S. 471, 488, 92 S.Ct. 2593, 33 L.Ed.2d 484 (1972), the Supreme Court held that the Due Process Clause mandated that a parole revocation hearing take place within a reasonable time after a parolee is taken into custody. However, the Supreme Court has since held that the prompt parole revocation hearing guaranteed by *Morrissey* is inapplicable where, as here, an individual has already been lawfully deprived of his liberty and is in custody on a criminal conviction. *See Moody v. Daggett*, 429 U.S. 78, 97 S.Ct. 274, 50 L.Ed.2d 236 (1976). In *Moody*, an inmate confined pursuant to a federal conviction challenged the failure of a state to hold a prompt parole revocation hearing after it had lodged a detainer for a

parole violation at the federal institution where he was confined. The Supreme Court held that the procedural protections outlined in *Morrissey* were inapplicable under such facts because the inmate's "present confinement and consequent liberty loss derive not in any sense from the outstanding [state] parole violator warrant, but from his [subsequent federal convictions]." *Id.* at 86, 97 S.Ct. 274. Accordingly, where a parolee has already been convicted of and incarcerated on a subsequent offense, the preliminary hearing contemplated by *Morrissey* is rendered unnecessary both because (1) the subsequent conviction gives the parole authority probable cause or reasonable ground to believe the parolee violated his parole conditions; and (2) issuance of the warrant does not immediately deprive the parolee of liberty. *Id.*, n. 7.

In a case involving similar facts, this Court reached the same conclusion. Relying on *Moody*, the Court held that a Virginia inmate was not entitled to an immediate preliminary hearing on a New York parole violator warrant filed with VDOC because his New York parole had not been revoked, but merely threatened. *See Bolden v. Murray*, 841 F.Supp. 742, 745 (E.D.Va.1994).

■ Petitioner was already incarcerated in federal custody at the time the Virginia detainer was lodged at FCI Petersburg. Thus, petitioner's present incarceration, and his resulting loss of liberty, is a result of his 1997 federal convictions, not his outstanding Virginia parole violator warrant. As such, he is not entitled to a prompt hearing on the alleged parole violation.[10]

---

9. It is unclear whether this review has occurred and whether petitioner's management variable has been changed.

10. Respondent argues that both reasons asserted in *Moody* to make a prompt preliminary hearing unnecessary are satisfied here, namely (i) that the subsequent conviction gives the parole authority probable cause to believe the parolee violated his parole condi-

tions, and (ii) that issuance of the warrant does not immediately deprive the parolee of liberty.

Clearly, the latter ground is satisfied as the Virginia detainer did not deprive petitioner of his liberty. This is sufficient to render the due process protections contemplated by *Morrissey* unnecessary. *See Moody*, 429 U.S. at 78–79, 97 S.Ct. 274 (noting that the execution

As a final matter, petitioner reiterates in his most recent filing his claim that the parole violation warrant issued by Virginia was executed on him while he was incarcerated in the Alexandria Detention Center (ADC). He bases this argument on the fact that he was served with the warrant at the ADC, and a preliminary hearing held there found probable cause to believe that petitioner had violated his parole. Petitioner therefore argues that, under *Moody v. Daggett,* this execution triggers petitioner's Due Process rights and enables his Virginia sentence to run concurrently with his federal sentence.

In making this argument, petitioner misapprehends both the definition of "execution" of a warrant and the nature of his incarceration in ADC. Responsive material from both the Virginia Attorney General and the United States Attorney has clearly established that petitioner was detained in ADC pursuant to *federal* charges. As petitioner was not in state custody, the warrant could not have been executed even if it had been served.[11] (Letter from Matthew Dullaghan, Assistant Attorney General, to Hon. T.S. Ellis, United States District Court, Eastern District of Virginia of 7/9/99, at 2.) Based on this fact, *Moody v. Daggett* does not apply to trigger either Due Process protections or the running of a state sentence.

B. *The Detainer Adversely and Unconstitutionally Affected the Terms and Conditions of His Confinement in an Adverse Manner:*

In his second claim, petitioner argues that the BOP violated his constitutional rights in considering the Virginia state detainer in its security classification of petitioner because the detainer affected the terms and conditions of his federal confinement in a punitive and adverse manner.[12] Specifically, petitioner contends that the management variable used to classify him as an "in" custody inmate was improper because it lengthened the term of his confinement and worsened the conditions of his confinement.[13]

Clearly, the filing of the Virginia detainer adversely affected the terms and condi-

of a warrant and custody under a warrant are the operative events triggering any loss of liberty attendant upon parole revocation under *Morrissey* ). Accordingly, it is unnecessary to review the parties' dispute over the former reason.

11. As the copy of the warrant in question indicates, execution requires that an authorized Virginia law enforcement officer take petitioner into custody. Execution did not occur because petitioner was detained by *federal* authorities pursuant to *federal* charges, namely conspiracy to commit wire fraud, possession of a firearm by a felon, and mail fraud. Petitioner apparently fails to appreciate that he could be and was detained in the ADC without being in the custody of the Commonwealth. Moreover, the warrant remains unexecuted on its face. (Resp. to Pet'r Req. for Writ of Habeas Corpus, Ex. 1.)

12. Petitioner argues that this is inappropriate given that he does not pose a risk to public safety.

13. In support of petitioner's argument that his classification prolonged the length of his federal incarceration, he asserts that the filing of the Virginia detainer prohibits his place-

ment in a halfway house. Petitioner conjectures that, but for the detainer, he would have been placed in a halfway house for the final six months of his federal sentence. As such, he argues that his term of incarceration would have been reduced by a period of six months. This argument fails, for as Gary D. Bowers, the Inmate Systems Manager at FCI Petersburg, explains, transfer to a halfway house is not a release from custody, but rather a transfer of custody to another institution until the expiration of an inmate's sentence.

Petitioner further contends that the BOP's inclusion of the Virginia detainer in his classification determination worsened the conditions of his confinement because his current classification prohibits him from participating in select rehabilitative programs. He asserts that declaring inmates ineligible for various programs on the basis of a detainer deprives the inmates of their due process rights, citing *Cooper v. Lockhart,* 489 F.2d 308 (8th Cir. 1973). This argument is also unpersuasive as the Supreme Court, in a decision subsequent to *Cooper,* held that federal inmates do not have a protected liberty interest in eligibility for rehabilitative programs. *Moody,* 429 U.S. at 88, n. 9, 97 S.Ct. 274.

tions of petitioner's confinement insofar as he was accorded an "In" custody classification rather than an "Out" custody classification. As such, petitioner was precluded from serving his term of incarceration in a minimum security facility such as a prison camp. The instant inquiry is whether such an adverse effect violated petitioner's constitutionally protected rights and entitles him to relief.

While the Supreme Court has not addressed the question of "whether a detainer based on a parole violator warrant can be used by the state [or jurisdiction] of incarceration to adversely classify a prisoner," there is persuasive authority sanctioning such use.[14] Specifically, in *Bolden v. Murray*, 841 F.Supp. 742 (E.D.Va.1994), Judge Smith correctly concluded that a discretionary parole system created no liberty or property interest. Therefore, even assuming a detainer had been used to adversely classify an inmate, the inmate would not be entitled to procedural protections. *See Bolden*, 841 F.Supp. at 747.

■ A review of *Bolden* leads appropriately to the underlying due process issue. To establish a due process claim, "a plaintiff must prove that he possessed a protected liberty or property interest and that he was deprived of that interest without being afforded the process to which he was constitutionally entitled." *Jackson v. Bostick*, 760 F.Supp. 524, 528 (D.Md.1991). Put simply, petitioner has not stated a viable due process claim because he has no protected liberty interest in a particular

classification within the BOP or in being confined in a particular institution.

In addressing the same argument, the Supreme Court concluded that:

[N]o due process protections were required upon the discretionary transfer of state prisoners to a substantially less agreeable prison, even where that transfer visited a "grievous loss" upon the inmate. The same is true of prisoner classification and eligibility for rehabilitative programs in the federal system. Congress has given federal prison officials full discretion to control these conditions of confinement, 18 U.S.C. § 4081, and petitioner has no legitimate statutory or constitutional entitlement sufficient to invoke due process.

*Moody*, 429 U.S. at 88, n. 9, 97 S.Ct. 274.

■ Petitioner has no protected liberty interest in being transferred to the institution or facility of his choice. *See Moody*, 429 U.S. at 88, n. 9, 97 S.Ct. 274. Inmates have no constitutional right to be confined in any particular institution. *Lyons v. Clark*, 694 F.Supp. 184 (E.D.Va.1988) (citing *Meachum v. Fano*, 427 U.S. 215, 96 S.Ct. 2532, 49 L.Ed.2d 451 (1976)). The BOP has the discretion "to transfer federal prisoners from one place of confinement to another at any time for any reason whatsoever and for no reason at all." *Lyons*, 694 F.Supp. at 187 (quoting *Brown–Bey v. United States*, 720 F.2d 467, 470 (7th Cir. 1983)). *See also* 18 U.S.C. § 3624(c) (granting the BOP sole discretion to transfer federal prisoners into pre-release cus-

---

**14.** The Fourth Circuit has held that a federal district court in the district of an inmate's confinement may entertain the inmate's habeas corpus challenge to the adverse effects on the conditions of his confinement resulting from the filing of a foreign detainer. *See Norris v. Georgia*, 522 F.2d 1006 (4th Cir. 1975). *See also Emanuel v. Witkowski*, 915 F.2d 1564 (4th Cir.1990) (unpublished) (holding that the district court should have considered inmate's claim challenging the adverse effects of a foreign jurisdiction's detainer on the conditions of his confinement). However, this Court has held that the Fourth Circuit's concerns with the detrimental effects of the

unresolved criminal allegations "do not exist ... where the parole violation has been conclusively established through the Virginia conviction." *Bolden*, 841 F.Supp. at 746, n. 2. (noting that *Norris* involved a detainer based on an untried criminal charge, not a detainer based on a parole violation). Unlike *Bolden*, in which the actions underlying the parole warrant were the same as those underlying the criminal convictions leading to the inmate's current confinement, the actions underlying the detainer in this action are distinct from those giving rise to petitioner's criminal convictions.

tody); *Lyle v. Sivley*, 805 F.Supp. 755 (D.Ariz.1992) (holding that the BOP's decisions to grant or deny pre-release treatment are committed to agency discretion and thus are not subject to judicial review absent colorable constitutional claims or claims that the agency exceeded its statutory authority; Due Process does not give rise to a liberty interest in pre-release treatment).

*C. The BOP's classification of petitioner unconstitutionally treated him differently from similarly situated inmates:*

Petitioner contends that when the BOP denied him camp placement based upon his detainer, it treated him differently from other similarly situated inmates. Petitioner contends that this violates the doctrines of "incremental liberty" and "less restrictive entitlement" established by the Fifth, Sixth, and Fourteenth Amendments. He further argues that FCI Petersburg decision-making regarding the classification of petitioner and other similarly situated inmates is arbitrary and capricious. Petitioner has not made a showing that the BOP's classification of him was either arbitrary or capricious. Congress has delegated to the BOP the authority to designate the place it deems appropriate for a federal inmate to serve his federal term of imprisonment. *See* 18 U.S.C. § 3621(b).

*D. Double Jeopardy:*

 In petitioner's Reply Brief, he raises a new issue.[15] He argues that his state court convictions and probation status were incorporated into his federal sentence in violation of the Double Jeopardy Clause. This claim is not a proper matter for this 28 U.S.C. § 2241 petition. Should petitioner wish to raise this claim, it must be asserted in a 28 U.S.C. § 2255 motion.

**15.** In an additional argument, petitioner avers that Virginia cannot use the Interstate Agreement for Detainers (IAD) to lodge a detainer against petitioner, while at the same time ignoring its provisions guaranteeing petitioner the right to a speedy trial. This argument lacks merit because the Supreme Court has

A federal inmate is required to assert collateral attacks challenging the validity of his federal judgment and sentence by filing a motion to vacate sentence pursuant to 28 U.S.C. § 2255. *See In re Vial*, 115 F.3d 1192, 1194 (4th Cir.1997) (en banc). Only when an action under § 2255 is "inadequate or ineffective to test the legality of [petitioner's] detention" is an action under § 2241 appropriate. *Id.* Such is not the case here. As such, petitioner's double jeopardy claims must be dismissed.

### III.

For these reasons, respondent's Motion to Dismiss will be granted and this petition for a writ of habeas corpus will be dismissed. An appropriate order will issue.

held that the scope of the IAD is limited to new criminal charges pending against a prisoner and excludes probation and parole violation charges. *Bolden*, 841 F.Supp. at 746 (citing *Carchman v. Nash*, 473 U.S. 716, 726, 105 S.Ct. 3401, 87 L.Ed.2d 516 (1985)).